IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| USHIP INTELLECTUAL PROPERTIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | )   No. 08-537 C |
| | ) |
| Defendant, | )   Judge Susan G. Braden |
| | ) |
| and | ) |
| | ) |
| INTERNATIONAL BUSINESS MACHINES | ) |
| CORPORATION, | ) |
| | ) |
| Third-Party Defendant. | ) |

---

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION**

---

TONY WEST
Assistant Attorney General

JOHN J. FARGO
Director

Of Counsel:                                SCOTT BOLDEN
GARY L. HAUSKEN                   Senior Trial Counsel
DAVID M. RUDDY                    Commercial Litigation Branch
Department of Justice               Civil Division
MICHAEL F. KIELY                  Department of Justice
United States Postal Service       Washington, DC  20530
                                               Telephone:    (202) 307-0262
June 28, 2011                           Facsimile:     (202) 307-0345

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

I.      Uship's Motion for Reconsideration is Misguided . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        A.      The Court should not reconsider an issue that Uship labels as
                "potentially" important . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

        B.      Uship repeats arguments that were considered by the Court . . . . . . . . . . . . . . . . 5

II.     The Court's Construction of the Disputed "Validating . . ." Step is Correct . . . . . . . . . . 7

        A.      The claim language indicates that only the automated
                shipping machine performs the "validating . . ." step . . . . . . . . . . . . . . . . 7

        B.      The specification confirms that only the automated
                shipping machine performs the "validating . . ." step . . . . . . . . . . . . . . . 10

        C.      The prosecution history confirms that only the automated
                shipping machine performs the "validating . . ." step . . . . . . . . . . . . . . . 12

III.    The Court Should Reject Uship's Efforts to Substitute Reversible Error
        for an Error of Nomenclature . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        A.      The Court's citation to the doctrine of prosecution history estoppel
                is harmless . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        B.      Uship invites reversible error . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                1.      Uship incorrectly asserts that the "validating . . ." step can be
                        attendant-performed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

                2.      Uship incorrectly asserts that the prosecution history is
                        ambiguous . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

# TABLE OF AUTHORITIES

## Cases

800 Adept, Inc. v. Murex Securities, Ltd.,
    539 F.3d 1354 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 20, 21

Alpha I, L.P. ex rel. Sands v. United States,
    86 Fed. Cl. 568 (2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Ammex, Inc. v. United States,
    52 Fed. Cl. 555 (2002), aff'd, 384 F.3d 1368 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . 3

Avery Dennison Corp. v. Flexcon Co., Inc.,
    15 Fed. Appx. 882 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Ballard Medical Products v. Allegiance Healthcare Corp.,
    268 F.3d 1352 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Baran v. Medical Device Techs., Inc.,
    616 F.3d 1309 (Fed. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

Bicon, Inc. v. Straumann Co.,
    441 F.3d 945 (Fed. Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Biogen, Inc. v. Berlex Labs., Inc.,
    318 F.3d 1132 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bishop v. United States,
    26 Cl. Ct. 281 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Caldwell v. United States,
    391 F.3d 1226 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3

Cohen v. United States,
    No. 07-CV-154, 2011 WL 1496328 (Fed. Cl. April 14,2011) . . . . . . . . . . . . . . . . . . . . 4

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,
    535 U.S. 722 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Fru-Con Constr. Corp. v. United States,
    44 Fed. Cl. 298 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000) . . . . . . . . . . . . . . . . . . . . . 2

Griswold v. United States,
    61 Fed. Cl. 458 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Interactive Gift Exp., Inc. v. Compuserve Inc.,
    256 F.3d 1323 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

L-3 Comms. Integrated Sys., LP v. United States,
    98 Fed. Cl. 45 (2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6

Maryland Enterprise, LLC v. United States,
    93 Fed. Cl. 658 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Matthews v. United States,
    73 Fed. Cl. 524 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5

Medrad, Inc. v. MRI Devices Corp.,
    401 F.3d 1313 (Fed. Cir. 2005)   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 18

Microsoft Corp. v. Multi-Tech Systems, Inc.,
    357 F.3d 1340 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 21

Move, Inc. v. Real Estate Alliance, Ltd.,
    413 Fed. Appx. 280 (Fed. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Omega Eng'g, Inc. v. Raytek Corp.,
    334 F.3d 1314 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Springs Window Fashions L.P. v. Novo Indus., L.P.,
    323 F.3d 989 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc.,
    529 F.3d 1364 (Fed. Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18

Yuba Natural Res., Inc. v. United States,
    904 F.2d 1577 (Fed. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**<u>Other Authorities</u>**

Rule 54 of the Rules of the United States Court of Federal Claims  . . . . . . . . . . . . . . . . . . . . . . . 2

Rule 59 of the Rules of the United States Court of Federal Claims  . . . . . . . . . . . . . . . . . . . . . . . 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

USHIP INTELLECTUAL PROPERTIES, LLC,   )
   )
       Plaintiff,   )
   )
   v.   )
   )
THE UNITED STATES,   )   No. 08-537 C
   )
       Defendant,   )   Judge Susan G. Braden
   )
   and   )
   )
INTERNATIONAL BUSINESS MACHINES   )
CORPORATION,   )
   )
       Third-Party Defendant.   )

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR RECONSIDERATION

Pursuant to the Court's Scheduling Order of June 3, 2011, Defendant, the United States ("the government"), hereby submits its brief in response to Plaintiff's Motion for Reconsideration of April 28, 2011 Claim Construction Decision.

## INTRODUCTION

Plaintiff, Uship Intellectual Properties, LLC ("Uship"), filed its Motion for Reconsideration ("Uship's Motion") on May 27, 2011, claiming that "the Court committed manifest error" with respect to the construction of the "validating . . ." step in the first claim of U.S. Patent Nos. 5,831,220 ("the '220 patent") and 6,105,014 ("the '014 patent"). Uship's Motion at 8. The Court should deny Uship's Motion because Uship's claim that the disputed construction is "potentially" important fails to show "extraordinary circumstances which justify relief." Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004). In addition, the Court should deny Uship's Motion

- 1 -

because Uship merely reasserts arguments that were already considered by the Court.  See Maryland Enterprise, LLC v. United States, 93 Fed. Cl. 658, 660 (2010).  Finally, the Court should deny Uship's Motion because the ultimate conclusion that the "validating . . ." step can only be machine-performed is well-supported by proper claim construction principles pursuant to Phillips v. AWH Corp., 415 F.3d 1303 (Fed. Cir. 2005).

## LEGAL STANDARD

Uship invokes Rules 59(a) and 54(b) in support of its Motion for Reconsideration.  See Uship Motion at 5; see generally Alpha I, L.P. ex rel. Sands v. United States, 86 Fed. Cl. 568, 571 (2009) ("The standards applicable to reconsideration of non-final decisions are set forth in Rules 54(b) and 59(a) of the Rules of the United States Court of Federal Claims (RCFC).").  "The decision whether to grant reconsideration lies largely within the discretion of the [trial] court."  Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990); see also Bishop v. United States, 26 Cl. Ct. 281, 285 (1992).  Critically, a "[m]otion[] for reconsideration must be supported 'by a showing of extraordinary circumstances which justify relief.'"  Caldwell, 391 F.3d at 1235 (quoting Fru-Con Constr. Corp. v. United States, 44 Fed. Cl. 298, 300 (1999), aff'd, 250 F.3d 762 (Fed. Cir. 2000) (table)).  In particular, the party requesting reconsideration must show:  "(1) the occurrence of an intervening change in the controlling law; (2) the availability of previously unavailable evidence; or (3) the necessity of allowing the motion to prevent manifest injustice."  Matthews v. United States, 73 Fed. Cl. 524, 526 (2006) (citing Griswold v. United States, 61 Fed. Cl. 458, 460-61 (2004)).  With respect to a motion for reconsideration based upon a claim of manifest injustice, the

error must be "clearly apparent or obvious." Ammex, Inc. v. United States, 52 Fed. Cl. 555, 557 (2002), aff'd, 384 F.3d 1368 (Fed. Cir. 2004).

If the moving party cannot establish "extraordinary circumstances" that "justify relief," the trial court should deny the motion for reconsideration. Caldwell, 391 F.3d at 1235. "A motion for reconsideration is not intended . . . to give an unhappy litigant an additional chance to sway the court." Matthews, 73 Fed. Cl. at 525 (2006) (citations omitted); see also Maryland Enterprise, 93 Fed. Cl. at 660 ("A movant cannot prevail by merely reasserting arguments which were previously made and were carefully considered by the court.") (citation omitted).

# ARGUMENT

### I.     Uship's Motion for Reconsideration is Misguided

#### A.     The Court should not reconsider an issue that Uship labels as "potentially" important

Uship improperly asserts that the Court should reconsider construction of the "validating . . ." limitation because it is "potentially" important. See Uship Motion at 7, 22. A vague assertion of potential importance, however, utterly fails to satisfy the Federal Circuit's requirement that the movant "**show**[] extraordinary circumstances which justify relief."[1]  Caldwell, 391 F.3d at 1235 (emphasis added). Uship claims that "preservation of the Court's decision . . . would work a manifest injustice" and that the "correction of the Court's error at this time . . . would be by far the most efficient course," Uship Motion at 7, but Uship never attempts to show the Court or the

---

[1]  An issue that is merely "potentially" important fails to meet either the "law of the case" or "as justice requires" standards for reconsideration. See, e.g., Maryland Enterprise, 93 Fed. Cl. at 660-61; L-3 Comms. Integrated Sys., LP v. United States, 98 Fed. Cl. 45, 48-49 (2011).

Defendants how or why injustice and inefficiencies are avoided.  For the injustice to be "indisputable" it must be clear that the alleged harm will actually occur.  Merely saying that a potential problem may arise falls far short of demonstrating an indisputable harm.  See Cohen v. United States, No. 07-CV-154, 2011 WL 1496328, at *2 (Fed. Cl. April 14,2011) ("Where a party seeks reconsideration on the ground of manifest injustice, it cannot prevail unless it demonstrates that any injustice is apparent to the point of being almost indisputable.") (citations omitted).

Despite Uship's nebulous assertion, the government agrees that the Court's construction of the "validating . . ." step is at least "potentially important."  Indeed, the government contends that the construction of this step is critically important because it is dispositive for purposes of noninfringement with respect to the asserted claims of the '220 and '014 patents.  Uship's repeated use of the word "potentially," however, implies an attempt to preserve its infringement contentions against the Defendants while simultaneously representing that a manifest injustice exists because the Court's construction would result in noninfringement.  Uship specifically identified its infringement contentions with respect to the "validating . . ." step in its claim charts on August 14, 2009.[2]  According to the claim charts, Uship contended that the accused devices met the "validating . . ." limitation of the '220 and '014 patents because "[u]se of the kiosk includes actions taken to determine that the item to be mailed has been received for storage and/or shipment."  See A10-11, 13-14 (Plaintiff's Claim Charts).  These infringement contentions are so expansive that they appear to be unaffected by the Court's construction of the "validating . . ." step.

---

[2]  A copy of Uship's claim charts has been attached to this Response at Exhibit A.  Uship served the claim charts on the Defendants pursuant to this Court's Order dated August 4, 2009.

| U.S. 5,831,220 | | |
|---|---|---|
| **Claim** | **USPS APC Kiosk:** | **Infringement Type** |
| validating receipt of said parcel or envelope as the parcel or envelope for which said shipping label was printed; and | Use of the kiosk includes actions taken to determine that the item to be mailed has been received for storage and/or shipment. | Literal and/or by equivalents |

**Table 1.**  Uship's infringement contentions are unaffected by the Court's construction of the "validating . . ." step.  See A10-11 (Plaintiff's Claim Charts) (line break omitted); see also A13-14 (Plaintiff's Claim Charts, '014 patent).

By expansively asserting infringement over any "use of the kiosk" by any entity exercising "actions taken," Uship controverts its assertion that the construction of the "validating . . ." step is potentially important.  Uship cannot have it both ways.  Uship cannot preserve its infringement contentions while claiming that a manifest injustice exists.

Uship cannot show that this issue is critically important when it refuses to explicitly concede what it tentatively implies to the Court:  that none of the accused devices would infringe, either literally or by equivalents, the first claim of the '220 and '014 patents pursuant to the Court's construction of the "validating . . ." step.  Uship's unsupported claim of "potentially critical importance," standing alone, fails to show manifest injustice.  Accordingly, the Court should dismiss Uship's Motion to Reconsider.

### B.    Uship repeats arguments that were considered by the Court

Even if Uship explicitly concedes noninfringement, its Motion is still misplaced because it simply repeats arguments previously considered by the Court.  See Matthews, 73 Fed. Cl. at 525 ("A motion for reconsideration is not intended . . . to give an unhappy litigant an additional chance to sway the court.") (citations omitted); Maryland Enterprise, LLC, 93 Fed. Cl. at 660 ("A movant

cannot prevail by merely reasserting arguments which were previously made and were carefully considered by the court."); L-3 Comms., 98 Fed. Cl. at 49 ("Where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again.") (citation omitted).  Uship's arguments for reconsideration are not new.  The Table below identifies Uship's broad arguments, and where the Court recognized and acknowledged Uship's arguments:

| Uship's Reconsideration Arguments | The Court Previously Acknowledged Uship's Arguments |
| --- | --- |
| "First, the doctrine of prosecution history disclaimer does not apply to the response to the restriction requirement here."  Uship Motion at 8-15; see also Uship PHCC Br. at 38-40, 42-44; Uship PHCC Reply at 38-42. | *Summary of Uship's arguments:*  "USHIP posits three reasons why the doctrine of prosecution disclaimer is nevertheless inapplicable . . . .  The applicant . . . was not trying to overcome a rejection or to address patentability concerns raised by the examiner.  Instead, the applicant was responding to a . . . restriction requirement."  Op. at 68. |
| "[Second], the statements and actions relied upon by the Court do not amount to the type of clear and unequivocal disavowal of claim scope that is necessary for invocation of the doctrine."  Uship Motion at 8, 15-22; see also Uship PHCC Br. at 40-41, 44-45; Uship PHCC Reply at 42-45. | *Summary of Uship's arguments:*  "[T]he applicant was not making 'clear and unmistakable prosecution arguments limiting the meaning of a claim term . . . . [T]he prosecution history of the '799 patent is ambiguous . . . ."  Op. at 68. |

**Table 2.**  Uship reasserts arguments which were previously made and considered by the Court.

Accordingly, Uship's repeated arguments are not appropriate for reconsideration.

II.     **The Court's Construction of the Disputed "Validating . . ." Step is Correct**

Turning to the substance of Uship's Motion, the Court correctly concluded "that only an automated machine can perform" the "validating . . ." step in the '220 and '014 patents. Op. at 70. With respect to the disputed "validating . . ." step of the '220 and '014 patents, the Court reached two ultimate conclusions:

> (1) [The "validating . . . step] means "determining that the item being received for storage or shipment is the item for which a label has been printed," and . . . (2) only an automated machine can perform this function.

Op. at 70 (annotation added).  The Court's first conclusion is generally[3] based on the claim language and the parties' agreement, and is not the subject of Uship's Motion.  See '220 Patent Claim 1 (". . . as the [item] for which said shipping label was printed . . ."); Uship PHCC Reply at 28-29.  Instead, Uship bases its Motion on its flawed contention that the "validating . . ." step could also be performed by an attendant.  See, e.g., Uship Motion at 1-2.  As described below, the Court's second conclusion that the disputed step is only machine-performed is well-supported by established claim construction principles pursuant to Phillips.

A.     **The claim language indicates that only the automated shipping machine performs the "validating . . ." step**

The relevant claim language and the context of the disputed step within the claim indicate that the automated shipping machine is the only entity that performs the "validating . . ." step.  The initial step in claim construction is to review the disputed limitation in the context of the claim language.  See Phillips, 415 F.3d at 1312-14; 800 Adept, Inc. v. Murex Securities, Ltd., 539 F.3d 1354, 1363 (Fed. Cir. 2008) ("As usual, we start with the language of the claims themselves.");

_____

[3]  The Court did not explain its decision to incorporate "determining" and "or shipment" in its construction.

<u>Interactive Gift Exp., Inc. v. Compuserve Inc.</u>, 256 F.3d 1323, 1331 (Fed. Cir. 2001) ("In construing claims, the analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to particularly point out and distinctly claim the subject matter which the patentee regards as his invention.") (citation omitted).

The relevant language in the asserted claim of the '220 patent[4] is highlighted below:

1.  **A method** of mailing parcels and envelopes **using <u>an automated shipping machine</u>**, comprising the steps of:

receiving payment information from <u>a customer</u>;

receiving package type information . . .;

weighing said parcel or envelope to be mailed;

receiving shipping information from said customer . . .;

computing . . . a delivery date and cost for delivery of said parcel or envelope . . .;

receiving an indication of the delivery service option desired by the customer;

printing a shipping label . . .;

printing a shipping receipt . . .;

**validating receipt of said parcel or envelope as the parcel or envelope for which said shipping label was printed**; and

<u>an attendant</u> of said customer storing a validated parcel or envelope in a secure storage area until said parcel or envelope is subsequently picked up by <u>a commercial delivery person</u>.

---

[4]  Claim 1 of the '014 patent is nearly identical to Claim 1 of the '220 patent.  Given the parallels between the claims and the specifications of the '220 and '014 patents, the citations in this Response refer to the '220 patent and incorporate by reference the corresponding citations to the '014 patent.

'220 Patent Claim 1 (emphasis added).  At least four key conclusions about the disputed "validating . . ." step are readily apparent from a review of the claim language.  First, the disputed step is **not** simply "validating" or "validating receipt"; instead, the step is identified as "validating receipt of [the item] as [the item] for which said shipping label was printed."   See, e.g., Bicon, Inc. v. Straumann Co., 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").  Second, Claim 1 of the '220 patent identifies four "actors" (underlined in the quote above):  (1) an automated shipping machine is identified in the preamble; (2) a customer is identified in the first claimed step; and (3) an attendant and (4) a commercial delivery person are identified in the last claimed step.  Third, the use of the word "automated" in the preamble is significant.  The Court correctly concluded that the preamble is a limitation.  See Op. at 54-55.[5]  The use of the word "automated" requires performance by a machine.[6]  Fourth, the structure of the steps imply a chronological order, whereby a machine receives information from a customer relating to a package; the machine prints a label and receipt for the package; the machine validates receipt of the package as the package for which the shipping label was printed; and, finally, an attendant stores the package.[7]  Critically, the claim language explicitly and implicitly identifies

---

[5]  Although the government agrees with the Court that the preamble is limiting, the government does not agree with the Court's construction of the preamble.  See Op. at 58-59.

[6]  With respect to the '464 patent, the parties and the Court agreed that "automated" means "automatically controlled by mechanical or electronic devices."  Op. Appx. I.A.  In Move, Inc. v. Real Estate Alliance, Ltd., 413 Fed. Appx. 280, 285-86 (Fed. Cir. 2001) (nonprecedential), the Federal Circuit equated "automated" with performance by a computer, rather than a human user.  To the extent the nonprecedential Move, Inc. decision is relevant to the present case, it contradicts Uship's arguments relating to the interpretation of the claim language.  See Uship Motion at 20 n.12 (citing).

[7]  At least with respect to Claim 1 of the '220 patent, an attendant stores the package.  Claim 1 of the '014 patent never identifies "an attendant" as performing **any** of the claimed steps.

the "automated shipping machine" as performing all of the steps other than the last.[8]  Thus, the plain

language of the claim and the context of the "validating . . ." step indicate that the automated

shipping machine performs the disputed step.  The allegation that an "attendant" could perform the

"validating . . ." step ignores the fact that the claim language does not even identify an attendant

until the last step, after the completion of the "validating . . ." step.

### B.    The specification confirms that only the automated shipping machine performs the "validating . . ." step

Second, the specification confirms that the automated shipping machine is the only entity

that "validat[es] receipt of [the item] as [the item] for which [the] label was printed."  '220 Patent

Claim1; see also Phillips, 415 F.3d at 1315 ("the specification is always highly relevant to the claim

construction analysis") (citation omitted).   The specification identifies at least two different

"validation" functions.[9]   In the machine-performed validation function described in the third

embodiment, the automated shipping machine confirms that the item received by the machine was

the same for which the label had been printed.  See '220 Spec. 21:38-22:10.  In the attendant-

performed function described in the fourth embodiment, an attendant simply confirms that the item

---

[8]  Indeed, the parties jointly agreed that the automated shipping machine performs **each** of the steps other than the disputed "validating . . ." step and the attended "storing . . ." step in Claim 1 of the '220 patent.  See Op. Appx. II.A. (an automated shipping machine performs the "receiving payment information . . ." step); II.B. (an automated shipping machine performs the "receiving package type information . . ." step); II.C. ("weighing . . ."); II.D. ("receiving shipping information . . ."); II.E. ("receiving an indication . . ."); III.B. ("printing a shipping label . . ."); II.F. ("printing a shipping receipt . . .").

[9]  The government disagrees that these two functions are "describe[d] . . . in claim 1."  Op. at 69.  The only validation function described in Claim 1 is the machine-performed function.  Beyond the two "validation" functions identified by the Court, the specification describes the automated shipping machine as "validat[ing]" a customer's credit card.  See '220 Spec. 19:33-35, 60-61.

- 10 -

has been received for shipment.  See '220 Spec. 25:2-12, 37-46; 29:8-22.  Significantly, only the machine-performed function relates to "validating receipt of [the item] as [the item] for which [the] label was printed."   Indeed, the patentees labeled the machine-validation function as "very important" and "critical since it verifies that the customer did not perform a package switch or forget to replace the package in the intermediate storage area for shipment."  '220 Spec. 21:43-49; see also Op. at 69.  According to the applicants, the automated shipping machine could confirm that the item received was the same for which the label had been printed by:  (1) using a photo cell sensor or (2) reweighing and/or redimensioning the item.  See '220 Spec. 21:49-22:10.  Either way, the machine confirmed that the item was "the same package for which the label was printed."  '220 Spec. 21:63-64.

The attendant-performed function, however, only confirms that the item has been received for shipment.  See generally '220 Spec. 25:2-5, 42-44, 47-49.  The attendant-performed function **does not** confirm that the item received is the same for which the label had been printed.  Here, the attendant merely stamps and initials the receipt document for the customer.  See id.  This function is not directed toward preventing a package switch by using a sensor or reweighing the item.  See '220 Spec. 24:58-62 (stating that the fourth embodiment is designed "so that [attendants] are not tied up by the . . . weighing . . . previously involved in the shipping of small packages").  As a result, the attendant-performed function in the fourth embodiment is not the subject of the disputed "validating . . ." step in this case.  See Medrad, Inc. v. MRI Devices Corp., 401 F.3d 1313, 1319 (Fed. Cir. 2005) (rejecting a patentee's argument that courts should not consider how a claimed device functions during claim construction "as unsound as it is sweeping").  The fact that Claim 1 does not encompass the fourth embodiment is irrelevant; especially since the claim appears to encompass the

"very important" and "critical" features of the third embodiment, whereas the fourth embodiment is not a preferred embodiment.  See Baran v. Medical Device Techs., Inc., 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment."); TIP Systems, LLC v. Phillips & Brooks/Gladwin, Inc., 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed."). Thus, the Court properly concluded that the attendant-performed function was not the subject of the disputed claim step, and that the step could only be performed by the machine.  See Op. at 70 (the validation performed by "a 'clerk' . . . do[es] not define the scope of the claim.").

### C.     The prosecution history confirms that only the automated shipping machine performs the "validating . . ." step

Third, the prosecution history unambiguously confirms that the automated shipping machine is the only entity that "validate[es] receipt of [the item] as [the item] for which [the] label was printed."  '220 Patent Claim1.  The Federal Circuit has emphasized that the prosecution history can be highly relevant during claim construction.  See Phillips, 415 F.3d at 1317 ("[T]he prosecution history provides evidence of how the PTO and the inventor understood the patent . . . [it] was created by the patentee in attempting to explain and obtain the patent.").  Where the applicant makes a representation regarding the scope of the invention, that representation will **always** be relevant.  See Microsoft Corp. v. Multi-Tech Systems, Inc., 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("[A]ny statement of the patentee in the prosecution of a related application as to the scope of the invention would be relevant to claim construction, and the relevance . . . is enhanced" by the circumstances of the proceeding.).

In the parent application's prosecution history, the applicants explicitly represented to the examiner that "each step" of the claim was to be "performed by the automated shipping machine" because of the language they incorporated into the claim's preamble. The critical part of applicants' representations, reproduced below, are clear, unambiguous, and emphatic:

Applicant has elected with traverse because Applicant disagrees with the Examiner's suggestion that the process claimed in independent method claims 1 and 72 can be performed by hand. Both of these claims specifically recite in the preamble a method of mailing parcels and envelopes "using an automated shipping machine" rather than specifically reciting at each step that the step is performed by the automated shipping machine. Applicant submits that if the method were performed by hand as the Examiner suggests, then it would not use an automated shipping machine as set forth in the preamble. Moreover, while the Examiner may ignore limitations in a preamble under certain circumstances when construing the scope of a claim, Applicant submits that it is improper to read a limitation out of a claim so as to change the claim's classification status merely because such limitation is in the preamble. Accordingly, Applicant submits that the

**Figure 1.** With respect to the independent method claims, Applicants represent that "each step . . . is performed by the automated shipping machine." G002346.

The applicants strongly "disagree[d] with the Examiner's suggestion" that any part of the process claimed in the independent method claims could be performed by hand. G002346. Instead, in both of the claims, "each step . . . is performed by the automated shipping machine." <u>Id.</u>

Critically, the applicants argued that the claim language already required machine-performance, and that "it is improper to read [this] limitation out of a claim." Id. Thus, since the applicants represented that "each step . . . is performed by the automated shipping machine, the prosecution history confirms that the automated shipping machine is the only entity that "validate[es] receipt of [the item] as [the item] for which [the] label was printed." Id.; '220 Claim 1.

The applicants' actions speak at least as loud as their words. Concurrent with their representations to the examiner, the applicants filed an Amendment and Response to Restriction Requirement to amend the claims to explicitly overcome the machine-performed limitation with respect to the "storing . . ." step. See G002345, G001844-45. The applicants inserted "an attendant or said customer" before the "storing . . ." to claim attendant-performance for that particular step:

**Figure 2.** Applicants amended claim 72 from "storing a validated parcel or envelope . . ." to "an attendant or said customer storing a validated parcel or envelope . . .". G002345. The applicants did not amend any other step, including the "validating . . ." step. See G001844-45.

Significantly, the applicants made the **same** amendment during the prosecution of **both** the parent application and the '220 patent. See id.; G004000, G003261-62. Thus, the amendments establish beyond a doubt that the applicants understood the difference between this machine-performance limitation and performance of the step by an attendant. The public is entitled to take the applicants' actions and representations at face value. See, e.g., Springs Window Fashions L.P. v. Novo Indus., L.P., 323 F.3d 989, 995 (Fed. Cir. 2003) ( "The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent."); see also Biogen, Inc. v. Berlex Labs., Inc., 318 F.3d 1132, 1139 (Fed. Cir. 2003) ("[T]he prosecution history [is] an official record that is created in the knowledge that its audience is not only the patent examining officials and the applicant, but the interested public."). Accordingly, the applicants' actions and representations during prosecution confirm that they intentionally limited the claims to an automated shipping machine as the only means to perform the disputed "validating . . ." step.

## III.     The Court Should Reject Uship's Efforts to Substitute Reversible Error for an Error of Nomenclature

### A.     The Court's citation to the doctrine of prosecution history estoppel is harmless

Uship takes issue with the Court's reference to prosecution history estoppel. Even though the Court's construction of the disputed "validating . . ." step is supported by well-established claim construction principles, the Court incorrectly stated that Uship's prosecution history representations "gave rise to patent prosecution history estoppel." Op. at 70. As noted by Uship, the doctrine of prosecution history estoppel limits application of the doctrine of equivalents during the infringement stage of a patent case. See Uship Motion at 13; Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki

<u>Co.</u>, 535 U.S. 722, 731-41 (2002).  The doctrine is not applied during the claim construction stage of a patent case.

Uship, however, fails to realize that the Court's citation to prosecution history estoppel is **harmless** under Federal Circuit precedent.   In <u>Ballard Medical Products</u>, the Federal Circuit affirmed summary judgment of noninfringement for a defendant, even though the district court mistakenly cited to prosecution history estoppel during claim construction:

> Nor do Ballard's arguments concerning the terminology in the district court's opinion suffice to overturn the judgment.  Ballard complains that the district court **incorrectly invoked prosecution history estoppel** to limit claim scope for literal infringement despite our case law that holds prosecution history estoppel to be inapplicable to literal infringement.
>
> It is true that the district court at one point in its opinion referred to prosecution history estoppel in the context of claim construction.  **What is important, however, is the analysis, not the nomenclature, and we are satisfied that in relying on the prosecution history as an aid to claim construction, the district court did not err.**  . . . .  Because the substance of the district court's analysis was sound, we disregard the fact that the court used the term "prosecution history estoppel" in an unconventional manner.

<u>Ballard Medical Products v. Allegiance Healthcare Corp.</u>, 268 F.3d 1352, 1358-59 (Fed. Cir. 2001) (emphasis added).  The same reasoning applies here.[10]  The Court considered and correctly rejected the applicability of the attendant-performed validation embodiment.  <u>See</u> Op. at 70.  The Court recognized that the applicants' actions and representations during prosecution confirmed that the automated shipping machine is the only entity that performs the "validating . . ." step.  <u>See</u> Op. at 69 n.17; 69-70.  As discussed previously in Section II of this Response, the Court's ultimate

---

[10]  <u>Ballard</u>, unlike the present case, involved prosecution history disclaimer.  <u>See id.</u>  That detail, however, is meaningless because the key point of <u>Ballard</u> is that the Federal Circuit will affirm "sound" analysis despite errors of "nomenclature."  <u>Id.</u>

conclusion is supported by established claim construction principles.  Since the Court's conclusion is sound, its mistake in nomenclature is harmless.

### B.      Uship invites reversible error

Uship seizes upon the Court's harmless citation to prosecution history estoppel as an opportunity to reargue that an attendant can perform the "validating . . ." step.  In doing so, however, Uship advocates that the Court substitute reversible error for an error of nomenclature.   By incorrectly maintaining that the disputed step may be attendant-performed, Uship invites reversible error by advocating for an erroneous claim construction that violates the principles of <u>Phillips</u>. Furthermore, and contrary to Uship's repeated assertions, the prosecution history is clear and unambiguous.

### 1.      Uship incorrectly asserts that the "validating . . ." step can be attendant-performed

As discussed in Section II of this Response, the claim language, specification, and prosecution history mandate that the "validating . . ." step must be machine-performed, as opposed to attendant-performed.  Faced with this, Uship responds by ignoring the claim language and arguing that any reliance on the prosecution history must be held to the heightened standards of prosecution history disclaimer.

Uship ignores the full claim language in order to expand the scope of the claim by creating a false equivalence between machine-performed validation and attendant-performed validation in the specification.  As discussed above, the machine-performed validation in the third embodiment is directed towards determining that the item is the same for which a label has been printed; the attendant-performed validation in the fourth embodiment is merely directed towards acknowledging

receipt of the item without determining that the item is the same for which a label has been printed.[11]
Yet the disputed step clearly requires a determination that the item is the same for which a label has
been printed.  Uship's false equivalence ignores the specific function recited in the claim, and the
Court properly rejected Uship's approach.  <u>See</u> Op. at 69-70; <u>Merdrad</u>, 401 F.3d at 1319 ("Medrad
argues that a court may not look to how an invention functions in determining the meaning of claim
terms. . . .[S]uch a proposition . . . is as unsound as it is sweeping.").

By ignoring the relevant claim language and falsely equating different types of validation
in the specification, Uship expands the scope of the disputed step far beyond its ordinary meaning.
As a result, Uship interprets any construction based on the ordinary meaning as an attempt to read
limitations into the disputed step.  Uship's flawed interpretation is particularly evident in its efforts
to invoke and rebut the doctrine of prosecution history disclaimer against the Defendants and the
Court.  By invoking prosecution history disclaimer, Uship seeks the advantage of forcing the
Defendants to prove a clear and unmistakable disavowal of claim scope in the prosecution history.
<u>See generally</u> <u>Omega Eng'g, Inc. v. Raytek Corp.</u>, 334 F.3d 1314, 1333 (Fed. Cir. 2003).  Yet, as
explained above, the applicants' clear and unmistakable statements in the prosecution history were
not disavowals of claim scope.  Instead, the applicants' clear and unmistakable statements simply
confirmed the scope evident from the claims and the specification.  <u>See</u> G002346 (arguing to the

---

[11]  Uship mistakenly asserts that Defendants bear the burden of finding "any other claim, in
any Uship patent, that would cover the [fourth] embodiment."  Uship Motion at 21 n.13.  Yet the
law does not require that every embodiment be covered by a claim.  <u>See</u> <u>Baran</u>, 616 F.3d at 1316
("It is not necessary that each claim read on every embodiment."); <u>TIP Systems</u>, 529 F.3d at 1373.
The applicants consciously claimed only machine-performed validation, and disputed the examiner's
suggestion that the steps could be attendant-performed.  Despite having ample opportunity, the
applicants never altered, edited, or recanted any of their statements relating to claim scope through
three consecutive continuation applications.

examiner that "it is improper to read [this] limitation out of a claim").  As such, both Defendants have repeatedly asserted that their respective claim constructions are not necessarily premised on prosecution history disclaimer.  <u>See, e.g.</u>, Gov't PHCC Response at 82-83; IBM PHCC Response at 48-50.  Despite the Defendants' assertions, Uship has continued to characterize the Defendants' arguments as raising the issue.  <u>See</u> Uship PHCC Reply at 38 ("whether or not they care to admit it, defendants are seeking to invoke prosecution history disclaimer"); <u>see also</u> Uship PHCC Reply at 37 ("defendants' prosecution history disclaimer argument (although they are coy about calling it that) is inapplicable here") (parenthetical in original).  Uship's interpretation of the Court's opinion is similarly uncharitable.  The Court never specifically cited the doctrine of prosecution history disclaimer to support its conclusion, but Uship repeatedly argues that the Court's failure to agree with Uship is tantamount to improperly relying on the doctrine.  <u>See</u> Uship Motion at 9 ("While the Court noted our argument . . . it did not address the substance of our argument in nevertheless applying the doctrine in this case."); Uship Motion at 16 (arguing that since "the Court did not explicitly reject" one of Uship's arguments, Uship "can only conclude that" the Court erred by relying on the doctrine); Uship Motion at 21 n.13 (arguing that the structure of the opinion and the alleged absence of "clear intent" prove that the Court erroneously relied on the doctrine).  Uship appears to argue that the doctrine of prosecution history disclaimer applies every time the Defendants and the Court cite the prosecution history during claim construction,[12] even though Uship's argument is at odds with Federal Circuit precedent.

---

[12]  <u>See, e.g.</u>, Uship Motion at 13 ("Prosecution history disclaimer is a claim construction doctrine and is thus at issue here.").

For example, in 800 Adept, Adept asserted that Targus infringed several patent claims relating to telephone call routing. See 800 Adept, 539 F.3d at 1357.  On appeal, Targus argued that the district court incorrectly construed the term "assigning" because the claims, specification, and prosecution history proved that calculations for completing the assignment had to be performed prior to the telephone call. See id. at 1362-63.  In particular, Targus cited statements from the prosecution history where Adept "repeatedly characterized the invention as one in which" the calculations were performed prior to the telephone call. Id. at 1364.  Adept – like Uship – responded by arguing "that it is improper to rely on these statements from the prosecution history because they are too ambiguous to serve as a 'clear and unmistakable' disavowal of claim scope." Id.  The Federal Circuit flatly rejected Adept's argument:

> In this case, however, we do not consult the prosecution history for [prosecution history disclaimer].  We simply use it as support for the construction already discerned from the claim language and confirmed by the written description, i.e., that all calculations necessary to assign a service location telephone number to a potential caller are completed before any call is placed.  Although the claims pending at the time of the quoted statements did not include the "assigning" limitation, the applicant was quite clear throughout prosecution that his invention performed calculations for assigning service location telephone numbers to callers prior to any call being placed.

Id. at 1365.  Since the trial court's construction of the disputed step was more expansive than the proper construction, and the trial court based infringement on this flawed construction, the Federal Circuit reversed the trial court's judgment of infringement on these claims. See id. at 1372.  Accordingly, this Court should reject Uship's argument that the Defendants and the Court are using the prosecution history to support a claim of prosecution history disclaimer.  As discussed

- 20 -

previously, the prosecution history simply confirms the construction evident in the claims and the specification – an automated shipping machine alone performs the "validating . . ." step.[13]

Finally, even if the applicants' statements had been directed towards disavowing claim scope – as opposed to clarifying the machine-performance limitation inherent in the claim language – the Court would be justified in relying on the statements to restrict the claim scope. The Federal Circuit has held that a patentee's statements "in response to a restriction requirement for the parent application . . . negate[d]" the plaintiff's arguments for a broader claim scope. Avery Dennison Corp. v. Flexcon Co., Inc., 15 Fed. Appx. 882, 885 (Fed. Cir. 2001) (nonprecedential); see also Tr. at 177:18-78:7 (Cherny) (citing). Ultimately, an applicant's prosecution statements relating to the scope of the claims cannot be ignored simply because they do not counter a pending prior art rejection. See, e.g., Microsoft Corp., 357 F.3d at 1349 (relying on statements presented by the applicant in "a 'summary of the invention' **before addressing** the § 103 rejection.") (emphasis added).

### 2. *Uship incorrectly asserts that the prosecution history is ambiguous*

In the guise of providing "context" for the applicants' statements, Uship selectively rewrites the relevant portions of the prosecution history. For example, Uship implies that the applicants' response was focused on a generalized "process" or "method" without particular regard to any part of a relevant claim. See Uship Motion at 17-18. Uship's implication is inaccurate. The restriction

---

[13]   In another striking parallel to the present case, Adept also argued that requiring the calculations to be performed prior to the telephone call was incorrect because the construction would exclude its preferred embodiment. See id. at 1365. The Federal Circuit disagreed, holding that the calculations in the preferred embodiment were not relevant to the disputed step. See id. Accordingly, this Court should similarly reject Uship's argument that the Court's construction excludes the fourth embodiment. See Uship Motion at 21 n.13.

requirement related to specific groups of claims and the whether the steps of those claims could be performed by hand.  The applicants strongly "disagree[d] with the Examiner's suggestion that the process **claimed** in independent method **claims** 1 and 72 [could] be performed by hand." G002346 (emphasis added).  The applicants focused on the specific claims and steps:

> Both of these **claims** specifically recite in the preamble a method . . . "using an automated shipping machine" rather than specifically reciting at **each step** that the **step** is performed by the automated shipping machine.

Id. (emphasis added).

In addition, Uship's claim that there was no reason for the applicants to surrender claim scope is based on faulty assumptions.  First, as described above, the ordinary scope of the disputed step excludes performance by an attendant, so there was nothing to "surrender."  The applicants' representations directly contradict Uship's assumption:  the applicants "submit[ted] that it [was] improper to read a limitation out of a claim," rather than indicating that they were surrendering claim scope.  Id.  Second, applicants' actions could be justified in any number of contexts.  For example, their actions clarified the scope of the claims to an examiner who was reading the claims too broadly.  As noted by the government's counsel during the hearing on October 29, 2010, the applicants' actions had the practical effect of avoiding a divisional application and saving $385 in fees.  See Tr. at 185:17-86:3; 192:1-16 (Ruddy).  Third, on a related note, the applicants could have opted to file a divisional application to cover attendant-performed validation with different claims. Instead, the applicant chose to correct the examiner with respect to the proper scope of their prosecuted claims, and chose not to file a divisional application.

Finally, Uship argues that the claim amendment is irrelevant with respect to claim scope, but Uship ignores the context of the amendment.  The applicants submitted their request to insert "an

attendant or said customer" before "storing" in the **same** document that they represented that "each

step . . . is performed by the automated shipping machine."  G002345-47.  That document, titled

"Amendment and Response to Restriction Requirement," confirms the ordinary meaning that each

step of the claim is machine-performed, other than the "storing . . ." step.

     Ultimately, Uship's construction contradicts the claim language and the patentees'

representations to the examiner and the public during prosecution history.  Uship's flawed approach

is at odds with the Federal Circuit's guidance to claim construction in <u>Phillips</u>:

| The <u>Phillips</u> approach | The government's approach | Uship's approach |
|---|---|---|
| Step 1:  "[T]he claims themselves provide substantial guidance as to the meaning of particular claim terms." <u>Phillips</u>, 415 F.3d at 1312. | Step 1:  Account for claim language <br><br>*"validating receipt of said parcel or envelope as the parcel or envelope for which said shipping label was printed"* | Step 1:  Ignore claim language <br><br>*"validating receipt of said parcel or envelope as the parcel or envelope for which said shipping label was printed"* |
| Step 2:  Read the disputed term in the context of the specification.  <u>Id.</u> at 1313, 1315-17 | Step 2:  Read the entire disputed term in the context of the specification. <br><br>*The third embodiment, discussing the entire disputed term, confirms that the step is machine-performed.* | Step 2:  Read the overbroad step in the context of the specification. <br><br>*Uship claims that Defendants ignore the fourth embodiment, but the fourth embodiment cannot "validat[e] receipt of [the item] as [item] for which said shipping label was printed"* |
| Step 3:  Read the disputed term in the context of the prosecution history, which "provides evidence of how the PTO and the inventor | Step 3:  Read the entire disputed term in the context of the prosecution history. <br><br>*The patentees confirmed to the examiner and the public – by representation and amendment – that each step is machine-* | Step 3:  Reject any use of the prosecution history, because relying on it to interpret the claim is tantamount to improperly asserting prosecution history disclaimer. |

| understood the patent." Id. at 1317. | *performed, unless the step states otherwise* | |
|---|---|---|
| Result:  Proper claim construction | Result:  Proper claim construction | Result:  <span style="color:red">Uship's claim construction improperly inflates the scope of the disputed step beyond the ordinary meaning.</span> |

**Table 3.**  An examination of the government's and Uship's claim construction approaches in light of Phillips.

Thus, the Court should deny Uship's Motion because the ultimate conclusion that the "validating

. . ." step can only be machine-performed is well-supported by proper claim construction principles

pursuant to Phillips.


## CONCLUSION

For the foregoing reasons, the Court should deny Uship's Motion for Reconsideration.


Respectfully submitted,

TONY WEST
Assistant Attorney General

JOHN J. FARGO
Director


  s/Scott Bolden
SCOTT BOLDEN

Of Counsel:
GARY L. HAUSKEN
DAVID M. RUDDY
Department of Justice
MICHAEL F. KIELY
United States Postal Service

June 28, 2011

SCOTT BOLDEN
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC  20530
Telephone:     (202) 307-0262
Facsimile:      (202) 307-0345

- 24 -