## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| USHIP INTELLECTUAL PROPERTIES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 08-537 C |
| ) | |
| THE UNITED STATES, ) | Judge Susan G. Braden |
| ) | |
| Defendant, ) | |
| ) | |
| And ) | |
| ) | |
| INTERNATIONAL BUSINESS MACHINES, ) | |
| CORP., ) | |
| ) | |
| Third-Party Defendant. ) | |
| ) | |

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR RECONSIDERATION OF APRIL 28, 2011 CLAIM CONSTRUCTION DECISION

Charles J. Cooper
Vincent J. Colatriano
Derek L. Shaffer
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone: (202) 220-9600
Facsimile: (202) 220-9601
Email: ccooper@cooperkirk.com

July 12, 2011                    Counsel for Uship Intellectual Properties, LLC

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

ARGUMENT .............................................................................................................. 1

I.      THIS COURT UNDENIABLY HAS THE DISCRETION TO
RECONSIDER ITS INTERLOCUTORY RULINGS ....................................................... 2

II.     THE COURT SHOULD RECONSIDER ITS RULING THAT ONLY THE
AUTOMATED MACHINE CAN PERFORM VALIDATION .......................................... 5

        A.     The Court Relied On Prosecution History Disclaimer To
Justify Its Construction Of The Validation Step ........................................ 5

        B.     The Doctrine Of Prosecution History Disclaimer Does Not
Apply To The Response To The Restriction Requirement ..................................... 10

        C.     There Was No Unambiguous Disavowal Of Attendant-Performed Validation ..... 16

CONCLUSION ........................................................................................................... 20

# TABLE OF AUTHORITIES

**Cases**                                                                             **Page**

*Adept, Inc. v. Murex Securities, Ltd.,* 539 F.3d 1354 (Fed. Cir. 2008)........................................10

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,*
    2000 WL 34204509 (N.D. Cal. Feb. 28, 2000) .....................................................................15

*Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.,* No. 97-4203,
    2000 U.S. Dist. LEXIS 22942 (N.D. Cal. Feb. 28, 2000) ......................................................15

*Amgen Inc. v. Hoechst Marion Roussel, Inc.,* 314 F.3d 1313 (Fed. Cir. 2003) ............................11

*Avery Dennison Corp. v. Flexcon Co., Inc.,* 15 Fed. Appx. 882 (Fed. Cir. 2001).........................12

*Bayer Aktiengesellschaft v. Duphar Int'l Research B.V.,* 738 F.2d 1237 (Fed. Cir. 1984) ...........14

*C.R. Bard, Inc. v. United States Surgical Corp.,* 388 F.3d 858 (Fed. Cir. 2004) ..........................17

*Cohen v. United States,* 98 Fed. Cl. 156, 2011 WL 1496328 (April 14, 2011)...............................3

*Computer Docking Station Corp. v. Dell, Inc.,* 519 F.3d 1366 (Fed. Cir. 2008)...........................17

*Ecolab, Inc. v. FMC Corp.,* 569 F.3d 1335 (Fed. Cir. 2009).........................................................17

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722 (2002).....................14

*Fru-Con Constr. Corp. v. United States,* 44 Fed. Cl. 298 (1999)....................................................3

*Intergraph Corp. v. Intel Corp.,* 253 F.3d 695 (Fed. Cir. 2001)..................................................3, 4

*Maryland Enter., LLC v. United States,* 93 Fed. Cl. 658 (2010) .................................................3, 4

*Merck & Co., Inc. v. Mylan Pharm., Inc.,* 190 F.3d 1335 (Fed. Cir. 1999) ..................................14

*Microsoft Corp. v. Multi-Tech Sys., Inc.,* 357 F.3d 1340 (Fed. Cir. 2004)....................................12

*Middleton, Inc. v. Minnesota Mining & Mfg.,* 311 F.3d 1384 (Fed. Cir. 2002) ............................13

*Move, Inc. v. Real Estate Alliance, Ltd.,* 2011 WL 995939 (Fed. Cir. March 22, 2011) ...............6

*Norian Corp. v. Stryker Corp.,* 432 F.3d 1356 (Fed. Cir. 2005) ...................................................19

*Omega Eng'g., Inc. v. Raytek Corp.,* 334 F.3d 1314 (Fed. Cir. 2003) ..........................1, 10, 12, 16

*Reckitt Benckiser Inc. v. Watson Labs., Inc.,* No. 2011-1231 (July 7, 2011) ................................14

*Regents of the Univ. of Cal. v. DakoCytomation Cal., Inc.*, 517 F.3d 1364 (Fed. Cir. 2008) .......14

*Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342 (Fed. Cir. 2005)...............................................11

*SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278 (Fed. Cir. 2005) .....................................18

*Ventana Med. Sys., Inc. v. Biogenex Laboratories, Inc.*, 473 F.3d 1173 (Fed. Cir. 2006).............5

*Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577 (Fed. Cir. 1990)....................................4

## **Other**

MPEP § 806.05(e)......................................................................................................................16

Plaintiff, Uship Intellectual Properties, LLC ("Uship") respectfully submits this reply in support of its motion for reconsideration of one aspect of one of the claim constructions rendered by the Court in its April 28, 2011 decision:  the Court's decision that only an automated machine can perform the "validation" step of the method claims in U.S. Patents 5,831,220 (the "'220 Patent") and 6,105,014 (the "'014 Patent").[1]

## ARGUMENT

In our motion, we argued that the Court's decision on the validation issue was premised on the incorrect application of legal principles governing the doctrine of prosecution history disclaimer.  In particular, we submitted that the Court misapplied that doctrine in two independent respects:  first, the doctrine is inapplicable to the prosecution history statements relied upon by the Court, which were not made in order to obtain the patents at issue; and second, even if the doctrine were otherwise applicable, the statements at issue did not amount to the type of unequivocal and unambiguous disavowals of claim scope that are necessary to overcome the intrinsic evidence plainly establishing that validation can be performed by an attendant as well as by the machine.  In short, because this is not a case "where the patentee has unequivocally disavowed a certain meaning to obtain his patent," *Omega Eng'g., Inc. v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003), the Court erred in invoking the prosecution history to rule that only

---

[1] We use the following shorthand references throughout this reply brief:  (1) "**Claim Construction Decision**" refers to the Court's Memorandum Opinion and Order Construing Certain Claims of United States Patent No. 5,481,464, United States Patent No. 5,831,220, and United States Patent No. 6,105,014 (filed April 28, 2011) (Doc. 74); (2) "**Recon. Mot.**" refers to Plaintiff's Motion for Reconsideration of April 28, 2011 Claim Construction Decision (filed May 27, 2011) (Doc. 75); (3) "**US Opp.**" refers to Defendant's Response to Plaintiff's Motion for Reconsideration (filed June 28, 2011) (Doc. 77); (4) "**IBM Opp.**" refers to IBM's Opposition to Plaintiff's Motion for Reconsideration of April 28, 2011 Claim Construction Decision (filed June 28, 2011) (Doc. 78); (5) "**Uship PH Br.**" refers to Plaintiff's Post-Hearing Claim Construction Brief (filed May 28, 2010) (Doc. 53); and (6) "**Uship PH Reply**" refers to Plaintiff's Post-Hearing Claim Construction Reply Brief (filed July 28, 2010) (Doc. 63).

the automated machine can perform the validation step.

In their responses, both the Government and IBM devote relatively little space to actually engaging our prosecution history disclaimer arguments on their merits.  Indeed, the Government does not get around to discussing the applicability of prosecution history disclaimer in this case until page 21 of its 24-page brief, and it even goes so far as to suggest that the Court did not actually rely on the doctrine of prosecution history disclaimer in construing the validation step.  US Opp. 19.  While IBM does not go that far, it does contend that the Court's construction of validation does not "hinge" on that doctrine.  IBM Opp. 7.  In addition, both the Government and IBM spend much of their submissions arguing either that the Court should not even reach the merits of our motion because it is based, improperly, on arguments we have already made, or that the Court's construction of validation is supported by considerations other than prosecution history disclaimer.  As we discuss below, these arguments, as well as the arguments the defendants make when they finally do get around to addressing prosecution history disclaimer, lack merit.

## I.   THIS COURT UNDENIABLY HAS THE DISCRETION TO RECONSIDER ITS INTERLOCUTORY RULINGS

The defendants each devote several pages of their submissions to a discussion of the extraordinary nature of requests for reconsideration and the high bar that such requests must clear in order for a court to reconsider its rulings.  US Opp. 2-6; IBM Opp. 2-6.  They both argue that because Uship's request for reconsideration is based on arguments that it had already made, Uship is seeking a "second bite at the apple" and its request for reconsideration should be denied on that basis.  US Opp. 5-6; IBM Opp. 4-6.  Uship freely concedes both that its motion raises points that it had raised previously,[2] and that reconsideration generally should not be viewed as a

---

[2] Of course, had Uship premised its motion for reconsideration on arguments it had *not* made previously, defendants would no doubt have opposed the motion (with some justification)

2

tool allowing disappointed litigants to re-air arguments that have already been carefully consid-

ered by the Court.  *See Maryland Enter., LLC v. United States*, 93 Fed. Cl. 658, 660 (2010).  But

no decision cited by defendants, and no other decision of which we are aware, flatly prohibits

reconsideration requests that are premised on arguments previously made by the movant.  Ra-

ther, as we have demonstrated, Recon. Mot. 5-7, reconsideration of interlocutory rulings is ap-

propriate in certain situations, including "when the prior decision is clearly incorrect and its

preservation would work a manifest injustice."  *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695,

698 (Fed. Cir. 2001).  *See also Maryland Enter.,* 93 Fed. Cl. at 660-61.  Indeed, reconsideration

was *granted* in some of the decisions cited by the defendants, under circumstances similar to

those present here.  *See, e.g., Cohen v. United States,* 98 Fed. Cl. 156, 2011 WL 1496328, at *13

(April 14, 2011) (granting reconsideration in part); *Fru-Con Constr. Corp. v. United States*, 44

Fed. Cl. 298, 315 (1999) (same).

In our motion, we noted that reconsideration here was warranted in part given "the poten-

tially critical importance of the Court's error to the infringement analysis for the '220 and '014

Patents' method claims."  Recon Mot. 7.  *See also id.* at 22.  The Government seizes upon our

use of the word "potentially," arguing that that single word prevents any showing of the type of

extraordinary circumstances that would justify reconsideration. US Opp. 3-4.  According to the

Government, our use of the word "potentially" rules out a showing by Uship that the Court's

construction of "validation" necessarily impacts Uship's infringement case.  *Id.*  The Govern-

ment takes this position even though, in the very next breath, it "contends that the construction of

this [validation] step *is critically important* because it is dispositive for purposes of noninfringe-

ment."  *Id.* at 4 (emphasis added).  So although the Government takes the position that this issue

on the grounds that Uship had waived such arguments.

3

is "critically important" to infringement, it suggests that this Court should not give any further consideration to this issue because Uship has said that it is only "potentially" critically important to infringement.  Needless to say, the decision whether to grant reconsideration should not and does not turn on such semantics.  Uship's failure to employ the precise phraseology favored by the Government cannot defeat reconsideration.

Ultimately, despite their rhetoric about the extraordinary nature of requests for reconsideration, both the Government and IBM concede that whether to grant reconsideration lies largely within the Court's discretion.  US Opp. 2; IBM Opp. 2.  *See Yuba Natural Res., Inc. v. United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990); *Maryland Enter.*, 93 Fed. Cl. at 660.  And neither defendant suggests that it would somehow be an abuse of discretion for the Court to grant reconsideration here.  This is not surprising, as any such suggestion would be utterly meritless.  Uship does not seek reconsideration as to every issue on which the Court ruled against it.  Rather, it seeks reconsideration as to a single ruling that raises legal issues pertaining to the proper application of claim construction principles.  While the Court's opinion recites Uship's arguments on these legal issues, the opinion does not explicitly address why the Court has rejected those arguments.  The Court's resolution of these legal questions is, we respectfully submit, "clearly incorrect," and preservation of the Court's decision "would work a manifest injustice."  *Intergraph Corp. v. Intel Corp.*, 253 F.3d 695, 698 (Fed. Cir. 2001).  Notwithstanding the Government's quibbling over the word "potentially," all parties agree that that ruling has important implications for Uship's infringement case.  No follow-on proceedings have taken place on the basis of the court's construction, thus making review and correction of that construction at this time by far the most efficient course.  For all these reasons, we respectfully submit that the Court should exercise its considerable discretion in this area to reach the merits of our reconsideration request.

**II.      THE COURT SHOULD RECONSIDER ITS RULING THAT ONLY THE
          AUTOMATED MACHINE CAN PERFORM VALIDATION**

**A.      The Court Relied On Prosecution History Disclaimer
          To Justify Its Construction Of The Validation Step.**

As noted, the Government suggests that the Court's decision was not premised upon, and IBM suggests it does not "hinge" upon, the doctrine of prosecution history disclaimer. US Opp. 19; IBM Opp. 7.   Both defendants argue instead that the Court's decision is premised upon or at least supported by the claim language and the specification.  US Opp. 7-12; IBM Opp. 7-11.  The defendants' desire to avoid reliance upon the doctrine of prosecution history disclaimer is understandable, given the limitations of that doctrine.  But the defendants' arguments must be rejected, for the Court *did* in fact rely on that doctrine; moreover, the claim language and specification do not support a construction of the validation step that would require that validation in all instances be performed by the shipping machine.

There can be little doubt that the Court's decision that validation cannot be performed by an attendant was based on prosecution history disclaimer.  First, the Court reiterated its earlier (correct) conclusion "that the 'automated shipping machine' language in the preamble … did not require that the method be performed *exclusively* by a machine."  Claim Construction Decision 69 n.17 (emphasis in original).  *See also id.* at 58.   The Court noted that its earlier discussion had *not* considered "whether the prosecution history estopped or clearly disavowed the claim that some of the steps could be done by hand."  *Id*. at 69 n.17.  Next, the Court made clear that it was the "prosecution history" that "show[ed]" that "the applicant … intended that each step was to be performed by a machine, unless otherwise stated."  *Id.* at 69.  After then discussing the prosecution history statements that the Court decided demonstrated the applicants' intent, the Court cited *Ventana Med. Sys., Inc. v. Biogenex Laboratories, Inc.*, 473 F.3d 1173 (Fed. Cir. 2006), for the proposition that a patent's prosecution history can be examined " 'to determine whether the in-

5

ventor *disclaimed* a particular interpretation of a claim term during the prosecution of a patent in suit or during the prosecution of an ancestor application.' "  Claim Construction Decision at 70 (citing *Ventana*, 473 F.3d at 1182) (emphasis added).  The Court then concluded that "[t]herefore, Uship's response to an election requirement for the '799 patent gave rise to patent prosecution history estoppel of the '220 patent."  *Id.*

Any suggestion that the Court's decision was not based on prosecution history disclaimer does not square with the above statements by the Court itself explaining its decision.  Indeed, the defendants' efforts to justify the Court's construction of validation on something other than prosecution history disclaimer are so divorced from the Court's own decision that they amount to an effort to rewrite that decision.  The Government and IBM therefore are themselves essentially seeking, albeit *sub silentio*, reconsideration of the Claim Construction Decision.

In any event, any suggestion that the Court's construction can be premised on the claim language and specification cannot withstand scrutiny.  With respect to the claim language, both the Government and IBM rely on the preamble's reference to the fact that the method uses an "automated shipping machine."  US Opp. 7-9; IBM Opp. 8-9.  But as the Court's decision itself establishes, nothing in that term requires that every step of the method be performed exclusively by the machine.  *See* Claim Construction Decision at 58 ("The preamble … provides that the invented method uses an automated shipping machine, but does not require the method to be performed exclusively by a machine."); *id.* at 69 n.17.[3]  Moreover, as we have noted in prior briefing, *see* Uship PH Br. 17; Uship PH Reply at 13, and as neither defendant disputes, most if not all machines or functions that might be commonly referred to as "automated" entail interactions

---

[3] *Cf. Move, Inc. v. Real Estate Alliance, Ltd.*, 2011 WL 995939, at *4 (Fed. Cir. March 22, 2011) (nonprecedential) (discussed at Recon. Mot. 20 n.12) (claim reciting a "method using a computer" did "not require that every claim step be performed exclusively by a computer").

between the human being and the machine.

The specification provides even less support for the defendants' position.  Indeed, the specification flatly contradicts the Government's and IBM's insistence that the invention requires the shipping machine to perform the validation step in all instances.  The specification's discussion of the so-called "fourth embodiment" of the invention makes clear that after a shipping label is printed and applied to the item, the item is then taken to an attendant such as a retail clerk "who validates receipt of the package and provides an appropriate receipt to the customer." '220 Specification 25:2-5. *See* Uship PH Br. 33-34 (discussing similar specification passages).

Faced with these specification passages, both the Government and IBM are reduced to arguing that the attendant-performed validation process described in the fourth embodiment is somehow completely different from the validation process claimed in the patent and described in the third embodiment because the fourth embodiment focuses solely on validating receipt of the package, whereas the claim and third embodiment require validating receipt of the package as the same package for which the shipping label was printed. US Opp. 10-12; IBM Opp. 9-10. While we have addressed this argument before, *see* Uship PH Br. 34-38, Uship PH Reply 33-36, it is worthwhile to briefly review why it is wrong.  At bottom, the defendants' contention is at war with the specification, which both (1) repeatedly emphasizes that the validation step described in the fourth embodiment is the same validation step claimed in the invention and described in other embodiments and (2) makes clear that attendant-performed validation under the fourth embodiment validates that the package received is the package *for which a label was printed* just as well as, if not better than, machine-performed validation.

Thus, the discussion of the fourth embodiment includes the following passage:

> *In this embodiment of the invention*, *information provided by the customer is used to generate an appropriate mailing label* which is then applied to the par-

cel, package or envelope by the customer. *The parcel, package or envelope with the label is then provided to a retail clerk who validates receipt of the package* and provides an appropriate receipt to the customer. …

   The [fourth] embodiment … thus differs from the previous embodiments in that it is semi-attended, i.e., a clerk is needed to take the parcel or envelope from the customer, to store the parcel or envelope in a secure storage area, and to validate receipt of the parcel or envelope.

   *This embodiment is otherwise quite similar to the third embodiment.*

' 220 Specification 24:66-25:14 (emphases added). Later on in the same discussion, the specification drives home this point once again:

   *The customer then applies the shipping label to the parcel or envelope* 708 *to be shipped.* The customer then brings the parcel or envelope 708 and receipt to the designated counter for paying the charges for shipment (if cash payment is desired) and deposits the package with the attendant. *The attendant then stamps and initials the receipt to validate the shipment and receipt of the parcel or envelope 708 from the customer.* …

   Obviously, this system is substantially simplified from the embodiments described above since the storage and *validation process* is performed by an attendant.

*Id.* 25:36-52 (emphases added).  Defendants' insistence that attendant-performed validation differs so meaningfully from machine-performed validation that it falls outside of the claim language cannot be reconciled with a common-sense reading of the above intrinsic evidence.

   Moreover, even in its comparatively elaborate discussion of machine-performed validation under the third embodiment, relied upon so heavily by the defendants, the specification describes a "simple embodiment" in which, after a shipping label is printed, the machine may "simply detect whether *any* package has been placed on the conveyor belt 340." '220 Specification 21:50-53 (emphasis added). In that event, "it is *presumed* that the package on the conveyor belt 340 is the appropriate package with the appropriate label." *Id.* 21:53-55 (emphasis added). Thus, under the third embodiment, once (1) a label is printed and (2) a package is placed in the machine for storage, the machine, through the presumption described in the specification, (3) "validates" it as the package for which the label was printed.

8

This process closely parallels the process described in the specification's discussion of the fourth embodiment. Once again, the machine prepares a shipping label. *See, e.g.*, '220 Specification 24:66-25:2; *id.* 28:57-59. "The parcel, package or envelope *with the label is then provided to a retail clerk who validates receipt of the package* and provides an appropriate receipt to the customer." *Id.* 25:2-5 (emphasis added); *see also id.* 25:37-43, 28:57-62, 29:17-22 (describing similar process). Thus, as with the third embodiment, once (1) a label is printed and (2) a package is given to the attendant for storage, the attendant (3) "validates" it as the package for which the label was printed.[4]

We have walked through this comparison demonstrating the functional equivalence of validation under the third and fourth embodiments in our opening post-hearing brief, in our post-hearing reply brief, and at the second claim construction hearing. *Defendants have never even acknowledged this comparison, much less refuted it.* Instead, they have continued to insist, against all the evidence, that the validation process discussed under the fourth embodiment is somehow so completely different from the validation process discussed in the third embodiment that it has absolutely nothing to do with the validation step discussed in the claim language. And they do so without even attempting to identify *any* other claim, asserted or unasserted, in any Uship patent, that would cover this fourth embodiment. In so doing, defendants call for the adoption of a heavily disfavored construction that would exclude a disclosed embodiment from the scope of the invention. *See* Recon. Mot. 21 n.13 (citing cases); Uship PH Br. 8-9, 24 (same).[5]

---

[4] Indeed, as we have established, Uship PH Reply 35-36, in this regard, attendant validation *better* accomplishes the purpose of validation than does machine validation under the third embodiment, because, unlike in the case of machine-performed validation, the attendant will be able to actually *see* that a label has been applied to the package.

[5] Defendants are erecting a strawman when they claim that we are somehow suggesting that the law *requires* that every claim cover every embodiment. US Opp. 12; IBM Opp. 10. We

9

Nor do defendants acknowledge that their argument that the specification passages de-scribing attendant-performed validation must refer to something different from the validation step contemplated by the patent claims has been rejected by the Court in its Claim Construction Decision.  *See* Claim Construction Decision at 70 ("USHIP is correct that one of the four em-bodiments in the '220 specification indicates that a 'clerk' may play some role in 'validation'.");  *id.* at 58 n.13 (discussing specification passage "describing an embodiment [the fourth embodi-ment] where an attendant performs the validation").  Once again, therefore, the Government and IBM, in the guise of arguing *against* Uship's reconsideration motion, are actually arguing *for* reconsideration of other aspects of the Court's validation decision.

For all these reasons, the Government and IBM are simply incorrect that the claim lan-guage and specification support the notion that validation can only be performed by the machine. It is therefore beyond dispute that the Court's construction does in fact "hinge" on the doctrine of prosecution history disclaimer.  *Cf. 800 Adept, Inc. v. Murex Securities, Ltd.,* 539 F.3d 1354, 1364 (Fed. Cir. 2008) ("The doctrine of prosecution disclaimer . . . is typically invoked to limit the meaning of a claim term that would otherwise be read broadly.").   Defendants' efforts, there-fore, to avoid analysis of the applicability of that doctrine to this case must be rejected.

### B. The Doctrine Of Prosecution History Disclaimer Does Not Apply To The Response To The Restriction Requirement.

We have argued that because the doctrine of prosecution history disclaimer only applies where the applicant has unequivocally disavowed otherwise applicable claim scope *in order to obtain the patent, Omega,* 334 F.3d at 1324, it is inapplicable here, where the statements relied

---

have never made any such suggestion.  Rather, our point is  simply that a construction that would exclude a disclosed embodiment is disfavored, and generally cannot be maintained absent highly persuasive support of such intent – such as evidence that the embodiment is covered by another claim or was somehow dedicated to the public or otherwise abandoned.

upon by the Court were not made for any reasons relating to the patentability of the claimed invention.  Recon. Mot. 8-15.  In response, both defendants persist in mischaracterizing Uship's argument as claiming that statements made in response to a restriction requirement are never relevant for claim construction purposes.  *See, e.g.,* IBM Opp. 12; US Opp. 23.   As we have repeatedly made clear (*see, e.g.,* Recon. Mot. 10-11; Uship PH Reply 37-38), we make no such sweeping claim.  Rather, our contention is quite limited:  namely, that because statements made in response to an administrative, non-substantive restriction requirement are typically (and in this case, indisputably) *not* made to establish patentability or otherwise in order to obtain claim allowance, they cannot be read to unequivocally restrict claim scope so as to support the application of prosecution history disclaimer.  As the Federal Circuit has made clear, that (correct) contention does not amount to a (false) claim that such prosecution history statements are always irrelevant and can never be considered by the Court in its claim construction analysis.[6]

　　In previous briefing, the Government and IBM cited decisions in which, they claimed, prosecution history disclaimer was invoked in the context of a restriction requirement.  We have demonstrated in our own briefing that the authority identified by the defendants did not support their position.  *See* Recon. Mot. 10-11; Uship PH Reply 41-42.  Significantly, the defendants do not rely upon these decisions in their responses to our motion for reconsideration.  Rather, they cite to a different decision, unmentioned in all of their previous briefing (though it was men-

---

　　[6] *See, e.g., Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1327 (Fed. Cir. 2003) ("Although [defendants are] correct that the prosecution history is always relevant to claim construction, it is also true that the prosecution history may not be used to infer the intentional narrowing of a claim absent the applicant's clear disavowal of claim coverage, such as an amendment to overcome a rejection."); *Salazar v. Proctor & Gamble Co.*, 414 F.3d 1342, 1347 (Fed. Cir. 2005) (although unilateral examiner statements cannot give rise to clear disavowal of claim scope, "it does not necessarily follow that such statements are not pertinent to construing claim terms").

tioned by IBM at the second claim construction hearing), in support of their contention that statements made in the context of s restriction requirement can support the invocation of prosecution history disclaimer.[7]  But that unpublished decision – *Avery Dennison Corp. v. Flexcon Co., Inc.,* 15 Fed. Appx. 882 (Fed. Cir. 2001) – does not even involve the doctrine of prosecution history disclaimer, much less mandate its application here.  In *Avery Dennison*, the Court of Appeals cited to the prosecution history to *confirm* the claim construction that it had reached on the basis of the rest of the intrinsic evidence.  *Id.* at 885.  Because the court was not looking to see whether the prosecution history statements at issue had the effect of disavowing or disclaiming claim scope that was otherwise applicable based on a reading of the claim language and specification, *Avery Dennison* decided exactly nothing about the applicability of the doctrine of prosecution history disclaimer in any context, let alone the present context.

Notably, neither defendant disputes that a restriction requirement is a discretionary administrative tool that has nothing to do with the patentability of an invention.  *See* Uship PH Br. 39, 42-43.  There is likewise no dispute that the applicants' response to the restriction requirement issued here was not made for the purpose of overcoming a rejection by the examiner or otherwise demonstrating the patentability of the invention disclosed in that application.  We respectfully submit that given these undisputed facts, it follows that the response to a restriction requirement that was never made final does not and cannot serve as the basis for the invocation of prosecution history disclaimer.  In short, because this is not a case "where the patentee has unequivocally disavowed a certain meaning to obtain his patent," *Omega*, 334 F.3d at 1324, prosecution history disclaimer has no role to play here.

---

[7] The Government also continues to cite to *Microsoft Corp. v. Multi-Tech Sys., Inc.*, 357 F.3d 1340 (Fed. Cir. 2004), *see* US Opp. 21, but as we've discussed, Recon. Mot. 12 n.7, that decision had nothing to do with a restriction requirement.

IBM nevertheless claims that because the applicant statements at issue here "moved the examination forward on all of the claims," they were made in order "to obtain the patent" under *Omega*.  IBM Opp. 14-15.  IBM has cited to no authority that supports its incredibly broad reading of *Omega*.  That is because, as far as we are aware, no such authority exists.  IBM's reading of *Omega* would deny meaning to that decision's holding that only statements that unequivocally disavow claim scope in order "to obtain the patent" implicate the doctrine of prosecution history disclaimer.  It would be hard to conceive of *any* applicant statement, short of an outright abandonment of a patent application, that could *not* be characterized as seeking to "move the examination forward."  Thus, under IBM's view of *Omega*, virtually all applicant statements are made "to obtain the patent."[8]

In our motion, we pointed out that the Court in its opinion used the term "prosecution history estoppel" rather than "prosecution history disclaimer."  Recon. Mot. 13.  Both the Government and IBM protest that this fact does not change the substance of the Court's analysis.  IBM Opp. 6; US Opp. 16.[9]  More to the point, IBM goes on to note that the "operative principles" governing the two doctrines are "the same."  IBM Opp. 6 n.3.  But IBM does not recognize that this concession itself seriously undermines defendants' argument that the doctrine of prosecution history disclaimer applies in the context of responses to restriction requirements.  As we

---

[8] Moreover, in focusing solely on the "to obtain the patent" phrase used in *Omega*, IBM completely ignores what other decisions stress – namely, that the prosecution history statement at issue must have been made "in order to obtain claim allowance" in order to support invocation of prosecution history disclaimer.  *See, e.g., Middleton, Inc. v. Minnesota Mining & Mfg.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002); *Salazar*, 414 F.3d at 1344.  This emphasis on claim "allowance" obviously focuses on the "allowability" -- *i.e., the patentability* – of claims.

[9] Contrary to the Government's suggestion, Uship is not suggesting that the mere fact that the Court referred to prosecution history estoppel rather than prosecution history disclaimer itself warrants reconsideration of the Court's decision.  US Opp. 15-17.  Rather, our point was, and remains, that even if invoked at an appropriate time in these proceedings, prosecution history estoppel would not apply in the circumstances in this case.  Recon. Mot. 14-15.

pointed out in our motion, Recon. Mot. 13-14, numerous decisions establish the quite limited

role that restriction requirements and the responses to restriction requirements should have even

in the prosecution history estoppel analysis.  *See, e.g., Merck & Co., Inc. v. Mylan Pharm., Inc.*,

190 F.3d 1335, 1340-41 (Fed. Cir. 1999); *Bayer Aktiengesellschaft v. Duphar Int'l Research*

*B.V.*, 738 F.2d 1237, 1243 (Fed. Cir. 1984); *Regents of the Univ. of Cal. v. DakoCytomation*

*Cal., Inc.*, 517 F.3d 1364, 1378 (Fed. Cir. 2008).  *See generally Festo Corp. v. Shoketsu Kinzoku*

*Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 736 (2002) ("estoppel arises when an amendment is

made *to secure the patent* and the amendment narrows the patent's scope") (emphasis added); *id.*

at 737 (a "patentee who narrows a claim *as a condition for obtaining a patent* disavows his claim

to the broader subject matter") (emphasis added).[10]   Neither the Government nor IBM addresses

this point, or these decisions, in their respective responses.  Thus, the jurisprudence surrounding

the doctrine of prosecution history estoppel confirms our submission that the Court erred by in-

voking the prosecution history here to trump the intrinsic evidence establishing that validation

can be performed by an attendant.

IBM also suggests that our argument "misconceives the nature of restriction require-

ments," IBM Opp. 15, and that the cases we cite for the proposition that prosecution history dis-

claimer does not apply to responses to restriction requirements stand only for the non-

applicability of the doctrine to *elections* made in response to restriction requirements and not to

*statements* made in such responses.  IBM Opp. 16-17.[11]   IBM has things precisely backwards.

---

[10] *Cf. Reckitt Benckiser Inc. v. Watson Labs., Inc.*, No. 2011-1231, slip op. at 13-14 (non-precedential) (July 7, 2011) (concluding that prosecution history estoppel applied where "narrowing claim amendments were made for reasons of patentability," and citing *Festo* (at 535 U.S. at 736) for the proposition that " '[e]stoppel arises when an amendment is made to secure the patent' ").

[11] IBM mistakenly claims that the magistrate judge's opinion in *Amersham Pharmacia*

14

As we have noted in prior briefing, the only cases in which the courts have suggested that prosecution history disclaimer may have a role to play in connection with restriction requirements have involved final elections in response to such requirements. *See* Recon. Mot. 11-13.   And the most that can be gleaned from such cases is that if the applicants here had, in response to the restriction requirement, elected to proceed to examination with only certain claims, and had that election become final, Uship could not later argue that the non-elected claims should in effect be read back into the patent.[12]

In the final analysis, and after all of the briefing filed by the parties, we stand by what we said in our motion:  We know of no decision in which a statement made in response to a restriction requirement that was never made final was nevertheless held to amount to prosecution history disclaimer, and thus to operate to disavow claim scope that is otherwise strongly supported by the intrinsic evidence.  Statements such as the one at issue here fall well short of the type of unequivocal disclaimer, made in order to obtain a patent, that is the defining feature of prosecution history disclaimer under controlling case law.

---

*Biotech, Inc. v. Perkin-Elmer Corp.*, No. 97-4203, 2000 U.S. Dist. LEXIS 22942, at *46 (N.D. Cal. Feb. 28, 2000), was rejected in relevant part by the district court. IBM Opp. 17 n.6.  The district court made clear that it was adopting the magistrate judge's recommended construction "for the reasons set forth in" the magistrate judge's order, *Amersham Pharmacia Biotech, Inc. v. Perkin-Elmer Corp.*, 2000 WL 34204509 *1 (N.D. Cal. Feb. 28, 2000), and it went on to add that the restriction requirement there did not overcome the evidence as to the correct construction of the claim terms at issue.  *Id.*  That the district court also noted that the restriction requirement was not "legally irrelevant," *id.*, shows only that the requirement, as part of the prosecution history, could be considered in connection with the claim construction analysis, a point we have never disputed.

[12] As we have explained, Recon. Mot. 12-13, even in that circumstance, the applicants would be free to file a separate application pursuing the non-elected claims.  In arguing that the applicants' response to the non-final restriction requirement here amounted to a disavowal of claim scope, IBM is seeking to place Uship in a *worse* position than if Uship had elected, in response to a restriction requirement that had been made final, to pursue only certain claims.

### C.     There Was No Unambiguous Disavowal Of Attendant-Performed Validation.

As we demonstrated in our motion, reconsideration of the Court's validation decision is also warranted on the independent ground that it cannot be said that the statements made in the response to the restriction requirement here amounted to the kind of unequivocal and unambiguous disavowal of claim scope that is sufficient to overcome the clear indications from the rest of the intrinsic evidence showing that attendant-performed validation is permitted.  Recon. Mot. 15-22.  Because it cannot be said that the *only* reasonable interpretation of the prosecution history here is that the applicants disclaimed anything other than validation performed exclusively by the shipping machine, the Court erred in holding that prosecution history disclaimer applies.  *See Omega*, 334 F.3d at 1324.

In this regard, we noted that the context surrounding the restriction requirement and the applicants' response was quite important in interpreting that response.  In particular, the restriction requirement noted that because, in the examiner's view, "the process for mailing" as described in the application's method claims "can be preformed [sic] by hand," the method and apparatus claims were distinct.  Recon. Mot. 17 (discussing G002342).  Thus, the restriction requirement was focused on whether the "process" as a whole, as opposed to any particular step in the process, could be performed by hand or by the machine.[13]  It was in this context that the applicants responded to the restriction requirement by noting that they disagreed with the examiner's suggestion that "the process" claimed in the method claims could be performed by hand.  Recon. Mot. 17-18 (discussing G002346).  The applicants went on to note that the preamble recited "a method" using an automated machine.  *Id.*  While the applicants then contrasted the pre-

---

[13] Significantly, the defendants do not dispute that the restriction requirement was simply tracking the guidance of the MPEP, which similarly focuses on "the process" as a whole.  *See* MPEP § 806.05(e).  *See* Recon. Mot. 3-4, 17.

amble to a claim in which it was recited at "each step" that the step would be performed by a machine, they immediately placed this statement in context by returning to the formulation they had used earlier and that directly responded to the examiner's inquiry:  "Applicant submits that if *the method* were performed by hand as the Examiner suggests, then it would not use an automated shipping machine as set forth in the preamble."  *Id*. (emphasis added).

For these reasons, the best interpretation of the applicants' response, read in context and as a whole, is that it simply rebutted the examiner's suspicion that the entire method could be performed by hand.[14]   But even if that were not the best reading of the applicants' statements, it is surely a plausible reading, which suffices to remove these statements from the realm of prosecution history disclaimer.  Recon. Mot. 18-19.

Neither the Government nor IBM actually engages the merits of our argument on this issue.  Neither defendant even claims, let alone demonstrates, that Uship's explanation of the applicants' statements in response to the restriction requirement is unreasonable.  Rather, the defendants' primary tactic is merely to quote the applicants' response and assert that it is unambiguous.  US Opp. 22; IBM Opp. 19.  But the defendants' *ipse dixit* is no substitute for analysis. The absolute most that could possibly be said about the defendants' position is that they have articulated a plausible reading of the applicants' statements.  But this is a far cry from demonstrating that their reading is the *only* plausible reading of those statements, which is what must be

---

[14] *Cf. C.R. Bard, Inc. v. United States Surgical Corp.*, 388 F.3d 858, 869 (Fed. Cir. 2004) (looking to "context" in which applicant statement was made to determine whether "it was intentionally made to overcome a rejection by the examiner"); *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1378 (Fed. Cir. 2008) ("the prosecution history must always receive consideration in context"); *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1343 (Fed. Cir. 2009) (finding that when applicants' statements were "considered in the context of the prosecution history as a whole," they were "not clear and unmistakable enough to invoke the doctrine of prosecution history disclaimer").

demonstrated in order for prosecution history disclaimer to attach.  For these reasons as well, the defendants' repeated admonitions regarding the right of the public to rely on the prosecution history (*see, e.g.,* US Opp. 15; IBM Opp. 12) miss the mark, since "[a]n ambiguous disclaimer … does not advance the patent's notice function or justify public reliance."  *SanDisk Corp. v. Memorex Prod., Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005).

The Government also engages in what can charitably be termed a creative recitation of the relevant context.  According to the Government, the restriction requirement "related to specific groups of claims and [to] whether *the steps of those claims* could be performed by hand." US Opp. 21-22 (emphasis added).  But as noted, the restriction requirement did not inquire into whether specific "steps" of the process could be performed by hand, but rather as to whether "the process" – *i.e.*, the process as a whole – could be so performed.  Perhaps even more adventurously, the Government asserts that in their response to the restriction requirement, the applicants "strongly 'disagree[d] with the Examiner's suggestion' that *any part of the process* claimed in the independent method claims could be performed by hand."  US Opp. 13 (qutoing G002346) (emphasis added).  But as the Government knows, the applicants were not responding to an examiner suggestion that "any part of the process" could be performed by hand, but rather to his suggestion that "the process" could be performed by hand.  That the Government resorts to such revisionist history should tell the Court all it needs to know about whether the statements at issue here actually amount to an unambiguous disclaimer.

The Government also relies on the fact that the applicants also amended the "storing" limitation of the method claim to specify that "an attendant or said customer" would perform that step.  US Opp. 22-23.  Once again, however, the Government does not engage at all with our arguments demonstrating why the amendment to the storing step does not and cannot amount to a

18

clear and unequivocal disavowal of the otherwise applicable scope of the validation step. *See* Recon. Mot. 19-21. Thus, the amendment by its terms does not speak to the validation step. In addition, the applicants noted that the amendment was made to "correct minor errors" and did not add new matter to the application. Recon. Mot. 4 (citing G002346). In addition, the fact that such an amendment was *not* made for the validation step would only matter if the claim language would *require* the machine to perform the step in the absence of such an amendment. As we have discussed, that is not the case here. Finally, the fact that the validation step was not similarly amended shows only that the validation limitation does not *require* an attendant to perform the step. It does not follow that an attendant is *forbidden* from performing the step. The Government does not respond to any of these points.

As for IBM, its primary argument takes issue with one aspect of the context surrounding the restriction requirement and the applicants' response to it – namely, that because the applicants were not attempting to distinguish their invention from prior art or otherwise to demonstrate the patentability of the invention, they had no need to surrender the otherwise applicable scope of their claims. According to IBM, under *Norian Corp. v. Stryker Corp.,* 432 F.3d 1356 (Fed. Cir. 2005), such contextual details are irrelevant to the analysis. IBM Opp. 19-20. IBM is mistaken. In *Norian*, the prosecution history statements at issue "expressly spoke" to the question at issue in the case, and the only question was whether the patentee would be allowed to avoid the full scope of that otherwise clear surrender on the grounds that the scope of surrender must be limited to only that which was absolutely necessary to avoid the prior art relied upon by the examiner. *Norian*, 432 F.3d at 1361-62. That the Federal Circuit answered this question in the negative does not equate to a holding that a court is precluded from considering the context in which a statement was made in determining whether that statement amounted to a clear and

19

unmistakable disavowal in the first place.  In any event, even if the Court were to ignore whether the applicants "needed" to surrender claim scope here, the remainder of the relevant context, addressed above and all but ignored by IBM, establishes that no such surrender took place here.

## **CONCLUSION**

For the foregoing reasons, as well as the reasons stated in Uship's motion, Uship respectfully submits that reconsideration of the question of whether the "validation" step claimed in the '220 and '014 Patents requires validation in every instance to be performed by the automated shipping machine is warranted at this time.

Dated:  July 12, 2011

Respectfully submitted,

/s/ Charles J. Cooper
_____

Of Counsel:

Charles J. Cooper
COOPER & KIRK, PLLC

Vincent J. Colatriano
Derek L. Shaffer

1523 New Hampshire Avenue, N.W.
Washington, DC 20036
Telephone:   (202) 220-9600
Facsimile:    (202) 220-9601

COOPER & KIRK, PLLC

Counsel for Uship Intellectual Properties, LLC

1523 New Hampshire Avenue, N.W.
Washington, DC 20036

20

**CERTIFICATE OF SERVICE**

I hereby certify that on this 12th day of July 2011, I caused to be served by the Court's electronic filing system copies of the foregoing on the following counsel:

> Scott David Bolden
> U. S. Department of Justice
> Civil Div. - Commercial Litigation Br.
> 1100 L Street, NW
> 8th Floor
> Washington, DC 20530
> (202) 307-0262
> Fax: (202) 307-0345
> Email: scott.bolden@usdoj.gov
>
> Steven C. Cherny
> KIRKLAND & ELLIS LLP
> Citigroup Center
> 153 East 53rd Street
> New York, NY 10022
> (212) 446-4800
> Fax: (212) 446-4900
> Email: scherny@kirkland.com

/s/ Vincent J. Colatriano