# In the United States Court of Federal Claims

No. 08-537C
Filed Under Seal: December 29, 2011
Re-Issued For Publication: December 30, 2011[1]

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| USHIP INTELLECTUAL PROPERTIES, LLC, | |
| Plaintiff, | |
| v. | Continuation Patent Applications; |
| | Motion For Reconsideration; |
| THE UNITED STATES, | Parent Patent; |
| | Prosecution History Disclaimer; |
| Defendant, | Restriction Requirement, 37 C.F.R. §§ |
| | 1.111, 1.142(a). |
| and | |
| INTERNATIONAL BUSINESS MACHINES CORP., | |
| Third-Party Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**Vincent J. Colatriano**, Cooper & Kirk, PLLC, Washington, D.C., Counsel for Plaintiff.

**Scott David Bolden**, United States Department of Justice, Civil Division, Washington, D.C., Counsel for Defendant.

**Steven Cherny**, Kirkland & Ellis, LLP, New York, New York, Counsel for Third-Party Defendant.

## MEMORANDUM OPINION AND ORDER REGARDING PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE COURT'S CONSTRUCTION OF THE TERM "VALIDATION."

On April 28, 2011, the court issued a Memorandum Opinion And Order Construing Certain Claims Of United States Patent No. 5,481,464, United States Patent No. 5,831,220, And United States Patent No. 6,105,014. *See USHIP Intellectual Props., LLC* v. *United States*, 98

---

[1] On December 29, 2011, the court forwarded a sealed copy of this Memorandum Opinion and Order to the parties to note any editorial errors requiring correction. The court has incorporated those comments, and corrected certain portions herein.

Fed. Cl. 396 (2011).   On May 27, 2011, the Plaintiff ("USHIP") filed a Motion For Reconsideration of the court's construction of the term "validation" ("Pl. Mot."). On June 28, 2011, the Defendant ("Government") filed a Response ("Gov't Resp."), together with supporting Exhibits.  On the same date, the Third-Party Defendant ("IBM") also filed a Response ("IBM Resp.").  On July 12, 2011, USHIP filed a Reply ("Pl. Reply").

The court's April 28, 2011 Memorandum Opinion and Order construed the identical preambles of the '220 and '014 patents[2] as a limitation, describing "[A] method of mailing parcels and envelopes using an automated shipping machine for at least some of the steps." *USHIP Intellectual Props.*, 98 Fed. Cl. at 441.   In addition, the court construed the term "validation" in the '220 and '014 patents as describing two functions: "*validating receipt* of the package or envelope; and *validating* that the package or envelope is *the one for which a label was printed*." *Id*. at 499 (emphasis added).  In addition, the court construed "validation" to mean "'determining that the item being received for storage or shipment is the item for which a label has been printed,' and that only an automated machine can perform this function." *Id*. at 449-50.

\* \* \*

USHIP requests reconsideration of the court's construction of "validation" for two reasons.  First, as a matter of law, the doctrine of prosecution history disclaimer is inapplicable. Pl. Mot. at 1, 8-15.  A restriction requirement[3] is "a discretionary administrative tool designed to advance efficient case management by the PTO[.]"  Pl. Mot. at 8.  Therefore, prosecution history disclaimer does not apply to USHIP's remarks in the February 7, 1996 Amendment And Response To [The January 8, 1996] Restriction Requirement (G002346), because they were not made "to overcome a rejection by the examiner, or to distinguish the invention over prior art, or in any other respect trying to establish that the invention was patentable under the standards established in the Patent Act."  Pl. Mot. at 8-9.  In other words, "there was . . . *no need*" for the applicants to surrender the scope of their claims.  Pl. Mot. at 18 (emphasis in original). Moreover, in the absence of clear language of surrender, statements made in response to a

---

[2] On April 29, 1994, Mr. Gary W. Ramsden and Mr. Kenneth W. Liles filed an application for a patent for an "Automated Package Shipping Machine" that issued on August 12, 1997 as U.S. Patent No. 5,656,799 ("the '799 patent").  *See USHIP Intellectual Props.*, 98 Fed. Cl. at 402.  On April 22, 1997, the co-inventors also filed for a continuation of the '799 patent that later issued on November 3, 1998 as U.S. Patent No. 5,831,220 ("the '220 patent"). *Id*.  In addition, on September 29, 1998, the co-inventors filed a continuation of the '220 patent that issued on August 15, 2000 as U.S. Patent No. 6,105,014 ("the '014 patent").  *Id*.  The '799 patent and '220 and '014 patents, as continuation applications, have identical subject matter.  *Id*. at 403; *see also* MANUAL OF PATENT EXAMINING PROCEDURE § 201.07 (8th ed. 2010) ("MPEP").

[3] 37 C.F.R. § 1.142(a) provides that: "If two or more independent and distinct inventions are claimed in a single application, the examiner in an Office action will require the applicant in the reply to that action to elect an invention to which the claims will be restricted, this official action being called a *requirement for restriction* (also known as a requirement for division). Such requirement will normally be made before any action on the merits; however, it may be made at any time before final action."  *Id*. (emphasis added).

restriction requirement "cannot be read to unequivocally restrict claim scope so as to support the application of the doctrine of prosecution history disclaimer."  Pl. Mot. at 11.

In the alternative, USHIP argues that, even if the doctrine of prosecution history disclaimer was applicable, the applicants' response to the restriction requirement, issued during prosecution of the '799 patent, was not a clear and unequivocal disavowal of claim scope.  Pl. Mot. at 15-22.  Specifically, statements made by the applicants in response to the January 8, 1996 Restriction Requirement do not amount to "an unequivocal and unambiguous disavowal of claim scope sufficient to overcome the clear indications from the rest of the intrinsic evidence showing that attendant-performed validation is permitted[.]"  Pl. Mot. at 15.  As a matter of law, prosecution history disclaimer narrows the ordinary meaning of the claim only "where the patentee has unequivocally disavowed a certain meaning to obtain his patent[.]"  *Omega Eng'g, Inc.* v. *Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).  Therefore, an ambiguous disavowal cannot invoke prosecution history disclaimer.  *See SanDisk Corp.* v. *Memorex Prods. Inc.*, 415 F.3d 1278, 1287 (Fed. Cir. 2005) ("An ambiguous disclaimer . . . does not advance the patent's notice function or justify public reliance, and the court will not use it to limit a claim term's ordinary meaning.").  Moreover, where a statement is subject to multiple reasonable interpretations, at least one of which would not amount to a surrender of claim scope, as a matter of law, prosecution history disclaimer is not applicable.  In this case, the applicants' February 7, 1996 Amendment And Response To [The January 8, 1996] Restriction Requirement, "[r]ead in context and as a whole," simply answered the examiner's inquiry as to when the method claims could be performed by hand.  Pl. Mot. at 18-19.  Therefore, there was "no clear, unambiguous, and unequivocal disavowal of attendant-performed validation."  Pl. Mot. at 19.

Likewise, the applicants' decision to amend the "storing" limitation does amount to "an unequivocal disavowal of the otherwise applicable scope of the validation limitation."  Pl. Mot. at 20.  The fact that "the 'validation' limitation was not similarly amended shows only that the validation limitation does not *require* an attendant to perform the step, and does not demonstrate that an attendant is *forbidden* from performing the step."  Pl. Mot. at 20 (emphasis in original).  Accordingly, "the only remaining basis for the Court's construction" was a misplaced reliance on the applicants' February 7, 1996 Amendment And Response To [The January 8, 1996] Restriction Requirement.  Pl. Mot. at 21.

The Government did not respond directly to the two issues raised by USHIP, but instead argues that "the Court's . . . conclusion that the [validating] step is only machine-performed is well-supported by established claim construction principles pursuant to *Phillips*."  Gov't Resp. at 7.  First, the plain language of the claim and the context of the disputed step indicate that the automated shipping machine is the only entity that performs the validating step.  Gov't Resp. at 7, 10, 22-23.  Moreover, the claim language explicitly and implicitly identifies the automated shipping machine as performing all of the steps, except for the last one.  Gov't Resp. at 9-10.  In fact, the claim language does not even identify an attendant until the last step, after the completion of the validating step.  Gov't Resp. at 10.  Therefore, an attendant-performed validation is not described in the claim language.

Second, the specification confirms that the automated shipping machine is the only entity that "validat[es] receipt of [the item] as [the item] for which [the] label was printed."  Gov't

Resp. at 10 (quoting A64 ('220 patent, claim 1)) (alterations added by Defendant). For example, the third embodiment shows the automated shipping machine confirming that an item, received by the machine, was the same item for which the label was printed by using a photo cell sensor or reweighing and/or redimensioning the item. Gov't Resp. at 10-11 (citing A60 ('220 patent, col. 21, l. 38-col. 22, l. 10)). In contrast, in the fourth embodiment, an attendant confirms that an item has been received for shipment. Gov't Resp. at 10-11 (citing A62, A64 ('220 patent, col. 25, ll. 2-12, 37-49; col. 29, ll. 8-22)). Because the attendant does not confirm that the item received is the same item for which a label is printed, an attendant is not required to perform the validating step. Gov't Resp. at 11. In short, by equating the third and fourth embodiments, USHIP inappropriately attempts to expand the scope of the disputed validating step. Gov't Resp. at 18.

Third, the Government adds that the prosecution history confirms that only the automated shipping machine performs the validating step. Gov't Resp. at 12. In the '799 patent's prosecution history, "the applicants explicitly represented to the examiner that 'each step' of the claim was to be 'performed by the automated shipping machine[.]'" Gov't Resp. at 13 (quoting G002346). Concurrent with this representation, the application that resulted in the '799 patent was amended by adding the words "'an attendant or said customer,'" before "'storing,'" to distinguish the "storing" step from the "validating" step. Gov't Resp. at 14 (quoting G002345). Performance of the "validating step," however, was limited only to an automated shipping machine. Gov't Resp. at 15.

IBM also responds that the court's construction of the validating step is supported by the claim language, the written description, and the prosecution history. IBM Resp. at 7. A straightforward reading of the claim language shows that, where the performance of a step was to be performed without the automated shipping machine, the claim so states. IBM Resp. at 8. For example, the "by hand" method of storing specifies "'an attendant of said customer storing a validated parcel.'" IBM Resp. at 8 (quoting A64 ('220 patent, col. 30, ll. 2-32)). The "Summary of the Invention" also confirms that the *invention* is an automated shipping machine that, among other things, validates that the parcel received is the same parcel, for which a shipping label is printed. IBM Resp. at 9 (emphasis added). In addition, validating performance by an attendant in the fourth embodiment is not the type of validating that the claim explicitly requires, because in the fourth embodiment an attendant validates only the receipt and not whether the *correct* package was received. IBM Resp. at 9-10 (emphasis added). Furthermore, statements made by the applicants during prosecution also confirm the applicants' intent that the term "automated shipping machine" in the preamble applied to all of the steps of the method, unless stated otherwise. IBM Resp. at 10-11 (citing G002346).

In addition, IBM emphasizes that the applicants' statements made in prosecution of the '799 patent are relevant intrinsic evidence, whether or not they amount to disclaimer. IBM Resp. at 11. Therefore, if an applicant elects to respond to a restriction requirement regarding the meaning and scope of claim terms, the examiner and the public are entitled to rely on those statements. IBM Resp. at 17. In this case, the applicants elected to do so. IBM Resp. at 20. Therefore, their response to the restriction requirement was a statement made to obtain a patent, resulting in the examiner's decision to proceed with an examination of all the claims. IBM Resp. at 14 (quoting 37 C.F.R. § 1.111) (The "reply must appear throughout to be a *bona fide* attempt

to advance the application or the reexamination proceeding to final action[.]"); *see also id.* at 15 (citing G002352 (noting that the restriction requirement "has been overcome by the applicant's traverse")).[4]

USHIP replies that, as a matter of law, prosecution history disclaimer does not apply to a response to a restriction requirement. Pl. Reply at 10 (citing *Omega*, 334 F.3d at 1324 (holding that the doctrine of prosecution history disclaimer only applies "where the patentee has unequivocally disavowed a certain meaning to obtain his patent")); *see also Middleton, Inc.* v. *Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002) ("This court also considers the prosecution history of the . . . patent to determine whether the applicant clearly and unambiguously 'disclaimed or disavowed [any interpretation] during prosecution in order to obtain claim allowance.'" (quoting *Standard Oil Co.* v. *American Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985)) (alterations in *Middleton*))).   Therefore, USHIP argues that a claim "allowance" focuses on the patentability of the claims; the focus is not on statements made in traverse. Pl. Reply at 13 n.8. In this case, there was no unambiguous disavowal of an attendant-performed validation during the prosecution.   Pl. Reply at 16.   The applicants' intent in responding to the restriction requirement was directed to satisfying the examiner's inquiry as to when the method claimed could be performed by hand: "'Applicant submits that if *the method* were performed by hand as the Examiner suggests, then it would not use an automated shipping machine as set forth in the preamble.'" Pl. Reply at 16-17 (quoting G002346) (emphasis added by Plaintiff). This type of explanation is not a disclaimer. Pl. Reply at 17-18.

In addition, USHIP adds that the claim language and specification do not support a construction that the "validation step" must be performed, in all instances, by the automated shipping machine. Pl. Reply at 5. As the court's April 28, 2011 Memorandum Opinion and Order determined, nothing in the preamble's reference to the "automated shipping machine" requires that *every step* of the method must be performed exclusively by machine. Pl. Reply at 6 (citing *USHIP Intellectual Props.*, 98 Fed. Cl. at 440). Moreover, the fourth embodiment shows that, after a shipping label is printed and applied to the item, the item is presented to an attendant "'who validates receipt of the package and provides an appropriate receipt to the customer.'"   Pl. Reply at 7 (quoting A62 ('220 patent, col. 25, ll. 2-5)). Therefore, not only is attendant-performed validation supported by the specification, but the specification further "makes clear that attendant-performed validation under the fourth embodiment validates that the package received is the [same] *package for which a label was printed* just as well as, if not better than, machine-performed validation." Pl. Reply at 7 (citing A61, A62 ('220 patent, col. 24, l. 66-col. 25, l. 14; col. 25, ll. 36-52)) (emphasis in original). Therefore, the specification's discussion of the fourth embodiment is nothing more than a variation of the third embodiment, in which the automated shipping machine, after "'simply detect[ing] whether *any* package has been placed on the conveyor belt 340 . . . *presume*[s] that the package on the conveyor belt 340 is the appropriate package with the appropriate label.'" Pl. Reply at 8 (quoting A60 ('220 patent, col. 21, ll. 50-55)) (emphasis added by Plaintiff). Therefore, the functional equivalence of validation, as demonstrated in the third and fourth embodiments, undermines the court's construction that

---

[4] A "traverse" is "PTO nomenclature" for "substantive arguments" made in response to an examiner's inquiry regarding "the propriety of continuing the prosecution of [an] application[.]"   Martin J. Adelman et al., PATENT LAW ("ADELMAN") 596-97 (2d ed. 2003).

the attendant-performed validation method described in the fourth embodiment differs from the validation method claimed in the patent.  Pl. Reply at 7-9.

*   *   *

A decision to grant a motion for reconsideration is within the court's discretion.  *See Yuba Natural Res., Inc.* v. *United States*, 904 F.2d 1577, 1583 (Fed. Cir. 1990) (holding that "the decision whether to grant reconsideration lies largely within the discretion of the [trial] court"). Although reconsideration is warranted in this case, for the reasons discussed herein, the court declines to adopt USHIP's proposed construction of "validation."

As a threshold matter, the court's April 28, 2011 Memorandum Opinion and Order never specifically cited the doctrine of prosecution history disclaimer[5] to support its construction of the "validation" term.  Instead, the court based its construction on an assessment of all of the intrinsic evidence, including the claim language, and the entire specification.  *See USHIP Intellectual Props.*, 98 Fed. Cl. at 449-50 ("[A]fter reviewing the *entire specification and claim 1* of the '220 and '014 patents, a person of ordinary skill in the art would understand that 'validation' means 'determining that the item being received for storage or shipment is the item for which a label has been printed,' and that only an automated machine can perform this function." (emphasis added)).  In addition, the court determined that the "*prosecution history further* shows that the applicant of the '799 patent . . . intended that each step was to be performed by a machine, unless otherwise stated."  *Id.* at 449 (emphasis added); *see also id.* ("[I]n light of the clear *intent of the applicant in claiming the invention* . . . ." (emphasis added)). The court acknowledges the mistaken and erroneous reference to prosecution history estoppel, *see id.* at 449 n.17, but that misstatement was not dispositive of the court's construction of "validation."  *See Ballard Medical Prods.* v. *Allegiance Healthcare Corp.*, 268 F.3d 1352, 1358-59 (Fed. Cir. 2001) (observing that "[w]hat is important [in claim construction] . . . is the analysis, not the nomenclature").

Turning to the court's construction, the term "validation" describes two functions: validating receipt and validating that the parcel is the same parcel for which a shipping label was printed.  *See USHIP Intellectual Props.*, 98 Fed. Cl. at 449; *see also Bicon, Inc.* v. *Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006) ("[C]laims are interpreted with an eye toward giving effect to all terms in the claim.").  The steps described in the '220 patent, claim 1, are presented

---

[5] The court does not need to determine whether the doctrine of prosecution history disclaimer is applicable in the context of a restriction requirement.  The factual record in this case, however, presents one where it could be determined to apply.  During prosecution, the applicants responded to a January 8, 1996 restriction requirement by filing an Amendment And Response To Restriction Requirement, amending the "storing" clause of Claim 72 to include the additional limiting recitation of "an attendant or said customer."  G002345.  Therein, the applicants explained that the "using an automated shipping machine" language was "specifically recite[d] in the preamble," "rather than specifically recited at each step."  G002346.  More importantly, the applicants' amended the claim language requesting "allowance of the above-referenced patent application[.]"  G002347; *see also* ADELMAN at 597 (noting that the reason why an amendment is offered is to avoid a rejection).

in a chronological order: first, information is received from a customer relating to a parcel; next, a shipping label is printed; then, the parcel is validated as the same parcel for which a shipping label was printed; then, the parcel is placed in storage for pickup.  A64 ('220 patent, claim 1).[6] Because the claim language supports a construction that one or both functions could be performed by an automated machine or "by hand," the court proceeded to examine the specification and prosecution history for additional guidance.  *See USHIP Intellectual Props.*, 98 Fed. Cl. at 449-50; *see also Phillips*, 415 F.3d at 1314 ("[T]he context in which a term is used . . . can be highly instructive.").

The specification includes two relevant embodiments: a machine-performed validation function and an attendant-performed validation function.  A64 ('220 patent, col. 30, ll. 25-32). The parties agree that in the machine-performed validation function, described in the third embodiment, the automated shipping machine confirms that an item is received by the machine, and that the item is the same item for which a label was printed.  A60 ('220 patent, col.  21, l. 38- col. 22, l. 10).  The parties also agree that the fourth embodiment describes the attendant- performed validation function, but do not agree that an attendant is required to validate that the "item" is the one for which a label was printed.  *Compare* Pl. Reply at 7 ("[A]ttendant-performed validation under the fourth embodiment validates that the package received is the package *for which a label was printed* just as well as, if not better than, machine-performed validation."), *with* Gov't Resp. at 10-11 (arguing that "the attendant-performed function does not confirm that the item received is the same for which the label had been printed") (citing A62, A64 ('220 patent, col. 25, ll. 2-12, 42-44, 47-49), *with* IBM Resp. at 9-10 ("The attendant in [the fourth] embodiment only 'validates receipt of the package.'") (quoting A62 ('220 patent, col. 25, ll. 2- 12).  The attendant in the fourth embodiment, however, has no way of determining whether the *correct* package has been received.  *See* A60 ('220 patent, col. 21, ll. 43-49).

USHIP insists that the functional equivalence of "validation" is demonstrated in the third and fourth embodiments.  Pl. Reply at 8-9.  For example, in the "simple" third embodiment, after a shipping label is printed, the automated shipping machine may "'simply detect whether *any* package has been placed on the conveyor belt 340.'"  Pl. Reply at 8 (quoting A60 ('220 patent, col. 21, ll. 50-53 (emphasis added by Plaintiff))).  In this example, "'it is *presumed* that the package on the conveyor belt 340 is the appropriate package with the appropriate label.'"  Pl. Reply at 8 (quoting A60 ('220 patent, col. 21, ll. 53-55 (emphasis added by Plaintiff))).  As such, in the third embodiment, "the machine, through the presumption described in the specification, . . . 'validates' [the package] as the package for which the label was printed."  Pl. Reply at 8. Therefore, USHIP asserts that the function in the third embodiment "closely parallels" that described in the fourth embodiment, where, after a shipping label is printed and applied to the item, the item is then taken to an attendant "who validates receipt of the package and provides an appropriate receipt to the customer."  A62 ('220 patent, col. 25, ll. 2-5); *see also* A62-A64 ('220 patent, col. 25, ll. 37-43; col. 28, ll. 57-62; col. 29, ll. 17-22).

---

[6] Claim 1 of the '220 patent specifies that "an attendant of said customer" stores the package.  A64 ('220 patent, col. 30, l. 29).  Claim 1 of the '014 patent, however, does not identify that "an attendant" performs any of the claimed steps.  *See* A109 ('014 patent, col. 30, l. 30).

The court agrees with USHIP that validation under the fourth embodiment is functionally equivalent to the validation depicted in the "simple third embodiment," but the procedure depicted in the fourth embodiment is not the same validating that the claim requires. As the court's April 28, 2011 Memorandum Opinion and Order explained, "'validation' means 'determining that the item being received for storage or shipment is the item for which a label has been printed[.]'" *USHIP Intellectual Props.*, 98 Fed. Cl. at 449-50. The act of "presum[ing] that the package on the conveyor belt is the appropriate package with the appropriate label" is not consistent with the additional validation required to *confirm* that the item received is the same item for which the label has been printed. A60 ('220 patent, col. 21, ll. 53-55). Therefore, the automated shipping machine-performed validation described in the third embodiment cannot be dispositive of a proper construction of "validation."

Similarly, the attendant-performed validation, described in the fourth embodiment, cannot be dispositive, because there is no disclosure of an attendant determining whether an item received is the same as the item for which a label was printed. *See USHIP Intellectual Props.*, 98 Fed. Cl. at 449. ("Although USHIP is correct that one of the four embodiments in the '220 specification indicates that a 'clerk' may play some role in 'validation,' (A62 ('220 patent, col. 25, ll. 8-12)), in light of the clear intent of the applicant in claiming the invention, these embodiments do not define the scope of the claim."). Unlike validation under the third embodiment, that uses a sensor or reweighing/redimensioning procedures to prevent package switch (A60 ('220 patent, col. 21, ll. 43-59)), validation under the fourth embodiment does not address the "very important" issue of a potential package switch. *See* A61 ('220 patent, col. 24, ll. 58-62) (noting that the fourth embodiment is designed "so that [attendants] are not tied up by the . . . weighing . . . previously involved in the shipping of small packages").

The court's construction of claim 1, however, does not need to reconsider differences between the third and fourth embodiments. *See Baran* v. *Medical Device Techs., Inc.*, 616 F.3d 1309, 1316 (Fed. Cir. 2010) ("It is not necessary that each claim read on every embodiment."); *see also TIP Sys., LLC* v. *Phillips & Brooks/Gladwin, Inc.*, 529 F.3d 1364, 1373 (Fed. Cir. 2008) ("Our precedent is replete with examples of subject matter that is included in the specification, but is not claimed."). The more relevant fact is that the specification's "Summary of the Invention" describes the invention as an "automatic shipping machine" (A50 ('220 patent, col. 2, ll. 40-60) and emphasizes that the validation function is "critical since it verifies that the customer did not perform a package switch or forget to replace the package in the intermediate storage area . . . for shipment." A60 ('220 patent, col. 21, ll. 46-49). The attendant in the fourth embodiment is not capable of performing this function. *See C.R. Bard, Inc.* v. *U.S. Surgical Corp.*, 388 F.3d 858, 864 (Fed. Cir. 2004) ("Statements that describe the invention as a whole, rather than statements that describe only preferred embodiments, are more likely to support a limiting definition of a claim term.").

Finally, the court has determined that the prosecution history supports the court's construction that only an automated shipping machine can perform the validation function recited in claim 1. *See USHIP Intellectual Props.*, 98 Fed. Cl. at 449; *see also 800 Adept, Inc.* v. *Murex Sec., Ltd.*, 539 F.3d 1354, 1365 (Fed. Cir. 2008) ("We simply use [the prosecution history] as support for the construction already discerned from the claim language and confirmed by the written description[.]"); *see also Phillips*, 415 F.3d at 1317 (holding that the prosecution

history is a part of the intrinsic evidence as it "provides evidence of how the PTO and the inventor understood the patent. . . . [T]he prosecution history was created by the patentee in attempting to explain and obtain the patent." (internal citations omitted)). It is settled that the prosecution history is relevant to claim construction, because it "contains the complete record of all the proceedings before the Patent and Trademark Office, including any express representations made by the applicant regarding the scope of the claims." *Vitronics Corp.* v. *Conceptronic Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

As previously discussed, during the prosecution of the '799 patent, the parent of the '014 and '220 patents, the examiner issued a restriction requirement requesting that the applicants elect either the method claims or the separate apparatus claims for examination. G002341-42; *see also id.* ("[T]he process for mailing can be preformed [sic] by hand."). In response, the applicants represented that "[b]oth [claims 1 and 72] specifically recite in the preamble a method of mailing parcels and envelopes 'using an automated shipping machine' *rather than specifically reciting at each step* that the step is performed by the automated shipping machine." G002345-46 (emphasis added); *see also USHIP Intellectual Props.*, 98 Fed. Cl. at 449 ("[T]he applicant . . . intended that each step was to be performed by a machine, unless otherwise stated."). Therefore, if the method were performed entirely by hand, it would no longer "use an automated shipping machine." G002346. USHIP counters that this statement was meant to "contrast[] the preamble to a claim in which it was recited at 'each step' that the step would be performed by a machine," to clarify the scope of the claims to an examiner. Pl. Reply at 16-17. Therefore, an interpretation of the February 7, 1996 Response To Restriction Requirement, "is that it simply rebutted the examiner's suspicion that the entire method could be performed by hand." Pl. Reply at 17. The court agrees. The proposition that each step of the method is not required to be performed by hand, however, does not contradict, but supports the court's construction that validation is performed by the automated shipping machine. If validation is performed by the automated shipping machine, then the examiner's concerns regarding the by-hand performance of the method claim is rebutted.

One final point. USHIP fails to appreciate the fact that the court's consideration of prosecution history was not dispositive in construing "validation," but another indicia of relevant intrinsic evidence. *See 800 Adept, Inc.*, 539 F.3d at 1365 (prosecution history may "support . . . [a] construction already discerned from the claim language and confirmed by the written description"); *see also Microsoft Corp.* v. *Multi-Tech Sys., Inc.*, 357 F.3d 1340, 1350 (Fed. Cir. 2004) ("Any statement of the patentee in the prosecution of a related application as to the scope of the invention would be relevant to claim construction[.]"); *Springs Window Fashions LP* v. *Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history requires that a patentee be held to what he declares during the prosecution of his patent."); *Hockerson-Halberstadt, Inc.* v. *Avia Group Int'l, Inc.*, 222 F.3d 951, 957 (Fed. Cir. 2000) ("The prosecution history constitutes a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct[.]"). The court's construction was based on the claim language, the specification, *and* the prosecution history.

**CONCLUSION.**

For the reasons discussed herein, Plaintiff's May 27, 2011 Motion For Reconsideration is granted-in-part and denied-in-part.

**IT IS SO ORDERED.**

<u>s/ Susan G. Braden</u>
**SUSAN G. BRADEN**
**Judge**